432 A.2d 630

Melanie VERNA,

v.

Daniel VERNA and Shirley Lucas.

Appeal of Daniel VERNA.

Superior Court of Pennsylvania.

Argued Jan. 14, 1981.

Filed July 17, 1981.

512

Michael J. Murphy, Munhall, for appellant.

Lowell T. Williams, Pittsburgh, for appellee.

Before SPAETH, SHERTZ and MONTGOMERY, JJ.

PER CURIAM:

The appeal before us is from an order directing Daniel Verna (father), appellant, to make provision for his adult daughter, Melanie Verna (appellee), age twenty-four, to be included on his medical coverage under Blue Cross and Blue Shield; and, in addition, to pay her $50.00 per month for supplemental costs, prescriptions and deductible items not covered by said medical insurance.

Appellant is not resisting that part of the order relating to the medical insurance coverage as he contends that he has continuously included his daughter in such coverage. However, he does object to the monthly payment of $50.00 which he has been ordered to make. He contends that the evidence is insufficient to prove that his daughter is indigent and unable to work. Secondly, he asserts that his daughter is an emancipated adult who voluntarily left the home she had with her father, which is still open to her.

A review of the family relationships will be helpful in properly deciding the issue before us. Melanie lived with her father and stepmother for some time prior to 1976 and paid him $20.00 per month rent while she was employed. During part of that period of time, she was a student. She

graduated from South High School in 1973 and went to work for General Nutrition in Pittsburgh for approximately two and one-half years. In 1975 or 1976, she left her father's home and went to live with her natural mother. She secured an apartment of her own, spending about one-fourth of her time there, and three-fourths at her mother's home. Following the termination of her employment with General Nutrition, she undertook vocational training and was about to graduate with a certificate in beautician care when it became necessary for her to go into a hospital for tests. She has always been an epileptic with occasional seizures for which she has been attended by a Doctor Hersh Wachs once every six months since 1973. Between visits, she takes medication prescribed by Dr. Wachs to control her seizures. She is also being seen by Dr. Earle Heath for a duodinal ulcer, a high anxiety state and convulsions. She is seen by Dr. Heath two or four times a month at his office. He also prescribes certain medications. Additionally, on the recommendation of Dr. Wachs, she visits Chartiers Mental Health Clinic, where she is seen by a social worker four times a month. His bill is $50.00 per visit. For two and one-half to three years prior to the hearing, or as of some time in 1976, she has been receiving $330.86 per month in disability benefits based on her own Social Security coverage.

 Undoubtedly, the presumption is when a child reaches majority, the duty of the parent to support that child ends. *Commonwealth ex rel. Welsh v. Welsh*, 222 Pa.Super. 585, 588, 296 A.2d 891, 893 (1972), citing, *Commonwealth ex rel. O'Malley v. O'Malley*, 105 Pa.Super. 232, 234, 161 A. 883, 884 (1932). Once the presumption arises, it is then incumbent upon the child to rebut that presumption. *Commonwealth ex rel. Schulberg v. Hirsch*, 236 Pa.Super. 179, 181–82, 344 A.2d 530, 531 (1975), citing, *Colantoni v. Colantoni*, 220 Pa.Super. 46, 281 A.2d 662 (1971). The duty to support the adult child continues where the child is physically or mentally feeble or otherwise unemployable. *Commonwealth ex rel. Welsh v. Welsh*, supra. The adult

child, however, has the burden of proving the conditions that make it impossible for her or him to be employed. *Colantoni v. Colantoni,* supra, 220 Pa.Super. at 50, 281 A.2d at 664.

■ We do not accept appellant's argument that the lower court relied on the action of the Social Security Administration as the sole basis for its conclusion that Melanie was disabled and unemployable, rather than compel that fact to be established by medical testimony. The record reveals Melanie's work history, her unsuccessful efforts to graduate from vocational training through no fault of her own, her history of epilepsy, and her need for medical assistance and medication as recognized by her father. As the lower court had all of the above listed evidence before it and the opportunity to see and speak with Melanie, we are compelled to conclude that the court had sufficient evidence at hand on which to base its finding that she was unemployable at that time.

Both parties in the instant case assert the applicability of The Support Law [1] and rely upon their respective constructions to buttress their inapposite positions. The Support Law clearly indicates at 62 P.S. § 1973 the legislative intention to require parental support of indigent children regardless of their age.[2] Subsequent legislation[3] purported to repeal § 1973 "insofar as it is inconsistent therewith." This subsequent legislation established at 62 P.S. § 432.6 a procedure whereby the Commonwealth could pursue an action in support against legally responsible relatives on behalf of specified indigent classes. Ancillary thereto, the defini-

1. Act 1937, June 24, P.L. 2045, 62 P.S. § 1971 et seq.

2. "The husband, wife, child (except as hereinafter provided), father and mother of every indigent person whether a public charge or not, shall, if of sufficient financial ability care for and maintain or financially assist such indigent person at such rate as the court of the county where such indigent person resides shall order or direct...." 62 P.S. § 1973(a).

3. Section 10 of Act 1976, July 15, P.L. 993, No. 202, effective in 60 days.

tion of "legally responsible relatives" was limited to spouses and parents of an unemancipated minor child.

■ Appellee argues, *inter alia*, that her cause of action is not within the ambit of Section 432.6. We agree, and further note that appellee's original claim falls more clearly within the language of Section 1973. Appellee, Melanie, was not an applicant for assistance as defined by Section 402,[4] and upon which definition Section 432.6 is predicated. The limited definition of "legally responsible relatives" found in Section 432.6(d) is, therefore, inapplicable to the case at hand.

■ We reject appellant's argument that the Statutory Construction Act, 1 Pa.C.S.A. § 1501 et seq., requires reading the two sections in pari materia. According to appellant, such a reading would require application of 1 Pa.C.S.A. § 1933, which rule directs that particular, special provisions of a statute control over general provisions. Appellant contends that the application of the aforesaid rule would lead to the interpretation that the more recent enactment of Section 432.6 would, as a result of the definition of "legally responsible relatives" contained therein, remove the obligation of support previously existing for children upon reaching majority. We believe, however, that the two provisions are best understood independently, with "legally responsible relatives" being those against whom the Commonwealth can take action on behalf of an "assistance" applicant. The language of Section 1973, on the other hand, does not limit its application to "assistance" applicants only. As a result, these two sections do not necessarily relate to the same persons or class of persons. It, therefore, follows that 1 Pa.C.S.A. § 1932 of the Statutory Construction Act is inap-

4. "As used in this article:
"Assistance" means money, services, goods, shelter, burial and medical, chiropractic and other health care, including nursing home care provided from or with State, Federal, county, county institution, district or municipal funds, for needy persons who reside in Pennsylvania and need assistance to provide for themselves and their dependents a decent and healthful standard of living, and for needy, homeless or transient persons . . . ." 62 P.S. § 402.

plicable.[5] Section 432.6 and Section 1973 are not in pari materia as the former relates to support from legally responsible relatives for applicants for public assistance, while the latter relates to relatives liable for the support of indigent persons.

The final question which must be resolved is whether Melanie is indigent in the context of Section 1973. This court has stated in an earlier case that though "indigent" is not defined in The Support Law, the Act indicates that the indigent person need not be helpless and in extreme want, so completely destitute of property, as to require assistance from the public. Indigent persons are those who do not have sufficient means to pay for their own care and maintenance. *Commonwealth ex rel. Home for Aged v. Kotzker*, 179 Pa.Super. 521, 525, 118 A.2d 271, 273 (1955). "Indigent" includes, but is not limited to, those who are completely destitute and helpless. It also encompasses those persons who have some limited means, but whose means are not sufficient to adequately provide for their maintenance and support. *Commonwealth ex rel. Home for Aged v. Kotzker*, supra. Our determination as to Melanie's indigency will, therefore, rest upon the adequacy or inadequacy of her Social Security benefits given the totality of the circumstances.

Our examination of the record in the instant case discloses that Melanie seeks financial assistance from her father to help pay large medication bills, and to help pay for the services rendered at the Chartiers Mental Health Clinic. These charges and fees are apparently not covered by her father's Blue Cross/Blue Shield plan. Melanie does not contend that her Social Security income and the benefits she currently receives from her father's medical insurance are not sufficient for her support. Instead, she is merely claiming that she needs additional funds to meet her necessary medical expenses. Under ordinary circumstances, this additional need might render her indigent.

5. This section entitled "Statutes in pari materia," states that "[s]tatutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things."

■ We cannot, however, overlook the fact that Melanie has two homes open to her: her father's which she left; and, her natural mother's which she occupies most of the time. Nevertheless, she maintains her own apartment, but occupies it only on occasion. This does not indicate indigency of such a nature to compel her father to provide her, an emancipated adult, with unlimited additional funds. The lower court apparently took this under consideration while framing its order. Though Melanie's medical bills exceed $50.00 per month after current Blue Cross/Blue Shield coverage is applied, the lower court saw fit to order only that her father pay her $50.00 per month for those supplemental costs not covered by said medical insurance. Additionally, the lower court ordered appellant to begin and continue including Melanie on his medical coverage. We feel that such an order correctly reflects the degree of Melanie's actual need or indigency.

Accordingly, we affirm the order of the lower court.