**SACRED HEART MEDICAL CENTER**

v.

**Marc WILLIAMSON and Harry Williamson and Mrs. Harry Williamson.**

**Civ. A. No. 84–5270.**

United States District Court, E.D. Pennsylvania.

June 30, 1986.

---

George W. Howard, III, Philadelphia, Pa., for plaintiff.

James J. Byrne, Jr. and Robert E.J. Curran, Media, Pa., for defendants.

## MEMORANDUM

JOSEPH S. LORD, III, Senior District Judge.

Plaintiff is a corporation of the Commonwealth of Pennsylvania with its principal place of business in Chester, Pennsylvania. Defendants Mr. and Mrs. Harry Williamson are citizens of New Jersey. I have diversity jurisdiction of the subject matter. 28 U.S.C. § 1332. Plaintiff has been unable to effect service of process upon defendant Marc Williamson, and therefore I lack personal jurisdiction over this defendant.

On May 9, 1983, Marc Williamson, the son of Mr. and Mrs. Harry Williamson ("defendants"), checked himself into the plaintiff Medical Center for treatment of an injured femur. Marc was then twenty-one years old, having been born on March 12, 1962. When he checked into the hospital, he was unaccompanied by his parents, neither of whom made any promise or agreement, oral or written, either then or at any other time, to pay for his hospital care. Marc was discharged on June 4, 1983, having incurred a bill of $11,676.75, no part of which has been paid. Marc had been in Sacred Heart Medical Center on two previous occasions, from April 14, 1982 to May 15, 1982 and from April 13, 1983 to April 16, 1983. The bills for both of these admissions were paid by the parents' health insurance company.

In 1980, Marc left his parents' home in Swedesboro, New Jersey to move to a mobile home in Delaware. Although the home was owned by his parents, they never lived there with Marc and were not personally aware that their son lived there or even where he did live. They do not now know his whereabouts.

After the latter 1983 hospitalization, Marc did stay at Swedesboro but only for three to ten days. Since 1980, the parents have contributed no money to Marc with the exception of $50.00 as birthday and Christmas presents. The Williamsons claimed Marc as a dependent on their 1983 income tax return.

 Intrafamilial relationships are determined by the law of the family's domicile, *see Chowdry v. Cunningham*, 297 F.Supp. 213, 215 (E.D.Pa.1969), in this case New Jersey. On the foregoing facts, which constitute my findings, there can be no doubt that in May, 1983, Marc was an emancipated adult under New Jersey law. In *Newburgh v. Arrigo*, 88 N.J. 529, 443 A.2d 1031 (1982), the court said that "[a]ttainment of age 18 establishes prima facie, but not conclusive, proof of emancipation.... Generally parents are not under a duty to support children after the age of majority." *Id.* at 543, 443 A.2d at 1037–38 (citations omitted).

Here, the defendants have made out a prima facie case of emancipation which has not been overcome. It is uncontradicted that their son was over eighteen, that he left home in 1980, that they do not know where he has lived or where he lives, that they have exercised no control over him, and that he was at all relevant times completely free of their dominance. The conclusion that Marc was emancipated is inescapable.

■ Since the operative facts surrounding the debt (the hospital stay and treatment) took place in Pennsylvania, that state's law governs the question of liability. Restatement (Second) of Conflict of Laws § 196. Plaintiff makes much of the fact that the parents claimed Marc as a dependent on their 1983 tax return. In my judgment, however, the significance plaintiff places on this fact is totally unwarranted. In the first place, the facts do not support a claim of dependency. Since 1980, Marc has not lived with his parents, nor do they know his whereabouts. They have given him no money except for occasional gifts. So far as the evidence shows, they have bought him no clothes, no food, no luxuries. In short, every indicia of dependency is lacking. A legal conclusion by a taxpayer that is contrary to the uncontradicted evidence cannot, by some alchemy, be made valid or effective.

Second, even if some hitherto unknown species of dependency could be conjured up from nothing, it would avail plaintiff nothing. Except for the transient incapacity occasioned by the femur treatment, there is no evidence that Marc suffered a physical or mental disability. Under common law, there is generally no obligation on a parent to support an adult child. So strong is this policy that it may apply even in the case of a demented and incapable child. For example, in *Gaydos v. Domabyl*, 301 Pa. 523, 152 A. 549 (1930), the court, in discussing whether an adult child could recover for his mother's wrongful death, said that:

> The mother may or may not have owed a duty to maintain him, depending on the circumstances at the time of the parent's death. The mere fact that he was an adult-demented child, incapable of caring for himself, does not, of itself, at common law, raise an obligation on the part of the mother to take care of him: *Loyalsock Twp. Overseers v. Eldred Twp. Overseers*, 154 Pa. 358 [, 26 A. 313].

*Id.* at 534, 152 A. at 553; *see also Erny's Estate*, 337 Pa. 542, 544–45, 12 A.2d 333, 334–35 (1940); *Boles's Estate*, 316 Pa. 179, 182, 173 A. 664, 665 (1934).

■ Plaintiff has referred me to a line of cases in which a parent has been ordered to support an adult child who has a mental or physical defect rendering self-support impossible. *See, e.g., Verna v. Verna*, 288 Pa.Super. 511, 514–16, 432 A.2d 630, 631–32 (1981) (per curiam); *cf. Brown v. Brown*, 327 Pa.Super. 51, 54–55, 474 A.2d 1168, 1169–70 (1984) (stating this proposition but finding it inapplicable to the facts of the case). Plaintiff argues that Marc's injured femur and his purported (but unproven) consequent inability to work brings him within the ambit of those cases. I disagree. Those cases are readily distinguishable on two grounds. First, they are not concerned with a limited, temporary disability, but rather with a permanently incapacitating infirmity. Second, the child's condition in those cases was not one which came into being after majority, but rather one which existed during minority and continued after the child came of age.

Moreover, plaintiff's argument leads to a *reductio ad absurdum*. One need only envision a 40 year old wage earner who is disabled for six weeks with a broken arm. Under plaintiff's argument, his parents would be liable for his medical bills. If the law intends any such bizarre result, then surely Mr. Bumble would have been right in his appraisal of the law as "a ass, a idiot." C. Dickens, *Oliver Twist*, Ch. 51.

Finally, I need touch only briefly on plaintiff's argument that payment of the two previous hospital bills by the parents' health insurance somehow imposes a duty on the parents to pay for the third hospitalization. Even if those bills had been paid by the parents themselves (which they were not), that fact would give rise to no duty to continue payment. In *Colantoni v.*

*Colantoni,* 220 Pa.Super. 46, 281 A.2d 662 (1971), the court said that:

> There was no contract or agreement in this case by the father to support his son in college. We cannot agree that the fact that the appellant did contribute to his son's education voluntarily and by order of the court prior to his marriage raises the circumstances to the status of a binding contract to provide an education for his son.

*Id.* at 50, 281 A.2d at 664 (citation omitted).

For all of the foregoing reasons, which constitute my findings of fact and conclusions of law, judgment will be entered for defendants Mr. and Mrs. Harry Williamson. Plaintiff having failed to effect service of process on defendant Marc Williamson, and this case having already proceeded to trial, plaintiff's claims against defendant Marc Williamson will be dismissed for lack of personal jurisdiction.