**Sharon L. STYLE, Appellant**

v.

**Ronald C. SHAUB, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 26, 2008.
Filed Aug. 11, 2008.

---

**6.** Due to our disposition, we need not address the Commonwealth's second and third issues.

Thelia J. Eaby, Lancaster, for appellant.

H. Allison Wright, Lancaster, for appellee.

BEFORE: FORD ELLIOTT, P.J., DONOHUE and POPOVICH, JJ.

OPINION BY DONOHUE, J.:

¶ 1 Appellant Sharon L. Style ("Style") appeals the order of the Court of Common Pleas of Lancaster County, Pennsylvania dismissing a petition for child support filed on behalf of her adult son, Dustin Charles Shaub ("Dustin"). After careful review, we affirm.

¶ 2 Style and Ronald C. Shaub ("Shaub") married on August 31, 1984 and their son, Dustin, was born on January 3, 1987. In November 1999, they separated and Style filed a petition requesting child support for Dustin, which was granted. The couple divorced on July 5, 2002.

¶ 3 On January 3, 2005, Dustin turned 18 years old and in July 2005 he completed high school. Pursuant to Pa.R.C.P. 1910.19(e), the Lancaster County Domestic Relations Office ("Domestic Relations Office"), sent Style notice that the child support order for Dustin would be terminated unless she notified them within thirty (30) days of any basis for continuing support. Neither Style nor Dustin responded to the Domestic Relations Office's Rule 1910.19(e) notice.[1] On June 6, 2005, the trial court ordered Shaub to cure arrear-

---

1. At the evidentiary hearing, Style testified that she "did not have any money to do anything" and that she "didn't have the funds to hire a lawyer to do it." N.T., 7/1/07, at 43. She further testified that she sent "the paper back stating that Dustin was disabled and has disabilities, and they sent my paper back stating that I needed to file some other kind of paper." *Id.*

ages owed to Style for past support, but determined that further child support for Dustin would be terminated. On July 14, 2005, after finding that Shaub had paid all arrears and fees, the trial court entered an order terminating child support for Dustin.

¶ 4 On October 25, 2006, Style filed a new complaint for child support on Dustin's behalf. In the new complaint, Style alleged that Dustin, now 19, had psychiatric and medical limitations that precluded him from maintaining gainful employment to support himself. On January 31, 2007, the trial court dismissed Style's complaint. On February 7, 2007, Style filed a *pro se* request for an evidentiary hearing, which was granted. The trial court conducted the evidentiary hearing on June 1, 2007.

¶ 5 At the hearing, testimony revealed that Dustin has had a long history of psychiatric and medical disabilities, including diagnoses for Attention Deficit Hyperactivity Disorder ("ADHD"), Oppositional Defiant Disorder ("ODD"), dysthymia (also referred to as chronic depression), and Atypical Autism. N.T., 6/1/07, at 24–25, 35. Dustin testified that he had been taking various medications for these conditions for most of his life. *Id.* at 61.

¶ 6 A review of Dustin's employment history showed that he had attempted three jobs, with mixed success. For example, he had been able to perform as a dishwasher at Pizza Hut, but could not handle a job at Dollar Store because he lost concentration and would just wander about the store. *Id.* at 32. In September 2006, Dustin began attending the Hiram G. Andrews Center (the "Andrews Center"), a residential institution in Johnstown, Pennsylvania which provides vocational training to disabled individuals.[2] *Id.* at 29–30. Lewis Hogarth ("Hogarth"), his vocational evaluator at the Andrews Cen-

ter, opined that Dustin could handle a job as a kitchen worker or custodian staff, and that while he worked slowly he could handle a variety of tasks and was courteous and cooperative. *Id.* at 19. Hogarth's report indicated that Dustin reads at an 8th grade level, can do mathematics at a 9th grade level, and has a full scale IQ of 78. *Id.* at 16, 22.

¶ 7 The trial court dismissed Style's complaint for two reasons. First, the trial court found that because Style and Dustin failed to respond to the Rule 1910.19(e) notice from the Domestic Relations Office, they were estopped from demanding a new support order directing Shaub to pay child support for Dustin as an adult. Trial Court Opinion at 13–14. Second, the trial court determined that Style and Dustin had presented insufficient evidence to rebut the presumption that Dustin, having reached the age of majority and completed high school, was unable to engage in profitable employment at a supporting wage. *Id.* at 11. On appeal, Style challenges both of these rulings.

¶ 8 This Court's standard and scope of review regarding a child support order is well-settled:

> In reviewing an order entered in a support proceeding, an appellate court has a limited scope of review. The trial court possesses wide discretion as to the proper amount of child support and a reviewing court will not interfere with the determination of the court below unless there has been a clear abuse of discretion. The function of the appellate court is to determine whether there is sufficient evidence to sustain the order of the hearing judge. An abuse of discretion is not merely an error of judgment; rather, it occurs when the law is overridden

---

**2.** Style testified that she filed the new support complaint because she had lost her job and

tuition at the Andrews Center had become a financial burden to her. *Id.* at 41–43.

or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, bias or ill-will.

*Kotzbauer v. Kotzbauer*, 937 A.2d 487, 489 (Pa.Super.2007) (internal citations omitted).

¶ 9 Our Court has not previously addressed the issue of whether it is permissible to assert a post-majority claim for support after a previous support order was terminated pursuant to Rule 1910.19(e). Our decisions in this area have all addressed the uninterrupted continuation of support after age 18, *see, e.g., Com. ex. rel. Cann v. Cann*, 274 Pa.Super. 274, 418 A.2d 403, 405 (1980), or a first request for support of a mentally or physically disabled adult child. *See Kotzbauer; see also Hanson v. Hanson*, 425 Pa.Super. 508, 625 A.2d 1212, 1214 (1993).

■ ¶ 10 In this case, we first note that the original (pre-majority) child support order was properly terminated pursuant to Rule 1910.19(e). Rule 1910.19(e)[3], adopted on October 11, 2002, provides a mechanism for termination of child support orders when the child becomes an adult. It requires the domestic relations section, within one year from the date when the child will reach eighteen, to issue an "emancipation inquiry" requesting relevant information regarding whether child support should be continued. If no response is received or if grounds are not asserted that would justify the continuation of child support, then the trial court may terminate the child support order without further proceedings.

¶ 11 The explanatory comment provides insight into the reason for Rule 1910.10(e):

Although support orders do not terminate automatically, many obligors are unaware of the necessity of filing a petition to terminate a child support order when the child becomes emancipated.

3. Pa.R.C.P.1910.19(e) provides as follows:

(e) Within one year of the date a child who is the subject of a child support order reaches eighteen (18) years of age, the domestic relations section shall issue an emancipation inquiry and notice to the obligee, with a copy to the obligor, seeking the following information:
(1) confirmation of the child's date of birth, date of graduation or withdrawal from high school;
(2) whether the child has left the obligee's household and, if so, the date of departure;
(3) the existence of any agreement between the parties requiring payments for the benefit of the child after the child has reached age eighteen (18) or graduated from high school; and
(4) any special needs of the child which may be a basis for continuing support for that child beyond the child's eighteenth birthday or graduation from high school, whichever is last to occur.
The notice shall advise the obligee that if the inquiry is not returned within thirty (30) days of mailing or if there is no agreement or the child does not have any special needs, the charging order may be modified or terminated by the court. When no other children are subjects of the child support order and the obligee either does not return the emancipation inquiry within thirty (30) days of its mailing or does not assert grounds for continuing support for the child, then the court shall have the authority to administratively terminate the child support charging order without further proceedings at any time on or after the last to occur of the date the last child reaches age eighteen (18) or graduates from high school. Termination of the charging order shall not affect any arrears accrued through the date of termination. The court shall have the authority to enter an order requiring the obligor to pay on arrears in an amount equal to the amount of the charging order until all arrears are paid.
If the order applies to another child or children and/or the oblige asserts that there is an agreement between the parties or that a child has special needs requiring continued support, then the domestic relations section may schedule a conference to determine if the charging order should be modified.
Pa.R.C.P.1910.19(e).

As a result, old orders have continued to charge long after the subject child has become an adult. New subdivision (e) is intended to address this problem by giving the obligee notice of a proposed modification or termination of the order and the opportunity to object. If no objection is made, or the oblige fails to respond with a reason to terminate or modify the order, the rule gives the court the authority to terminate or modify the charging order, depending upon whether or not other children are covered under the order.

Pa.R.C.P.1910.19 (2002 Explanatory Comment).

¶ 12 Rule 1910.19(e) is essentially a house-keeping rule established to terminate "old orders [that] have continued to charge long after the subject child has become an adult." *Id.* After proper notice of termination and an opportunity to object, a trial court may then enter an order terminating the child support order. That is precisely what occurred in this case. Because neither Style nor Dustin responded to the Rule 1910.19(e) notice from the Domestic Relations Office, the trial court terminated the pre-majority child support order.

¶ 13 Although the pre-majority child support order was properly terminated pursuant to Rule 1910.19(e), we do not agree with the trial court that Style was estopped from filing a new request for support. Without determining the applicability of the doctrine of equitable estoppel generally to issues of child support like the one presented here, it is clear that under the law of Pennsylvania, a finding of estoppel must be based upon a demonstration of detrimental reliance by the party asserting the doctrine. *See, e.g., Borough of Akron v. Hollinger*, 633 A.2d 1244, 1247 (1993). Here Shaub offered no evidence to show any detrimental reliance on his part to the termination of the original (pre-majority) child support order.

¶ 14 In Pennsylvania, the duty to support a child generally ceases when the child reaches the age of majority, which is defined as either eighteen years of age or when the child graduates from high school, whichever comes later. *Blue v. Blue*, 532 Pa. 521, 616 A.2d 628 (1992). 23 Pa.C.S.A. § 4321(3), however, provides that "[p]arents may be liable for the support of their children who are 18 years of age or older." In applying section 4321(3), this Court has found that there is a presumption that the duty to support a child ends when the child reaches majority:

> Ordinarily a parent is not required to support his adult child but there is a well recognized exception supported by abundant authority that where such child is too feeble physically or mentally to support itself the duty on the parent continues after the child has attained its majority.

*Commonwealth ex. rel. O'Malley v. O'Malley*, 105 Pa.Super. 232, 161 A. 883, 884 (1932); *see also Verna v. Verna*, 288 Pa.Super. 511, 432 A.2d 630, 632 (1981); *Colantoni v. Colantoni*, 220 Pa.Super. 46, 281 A.2d 662, 664 (1971).

¶ 15 This presumption is not rebuttable if the child becomes disabled only *after* reaching the age of majority. *See Overseers of Mount Pleasant v. Wilcox*, 12 Pa.C.C. 447, 2 Pa. Dist. 628, 1893 WL 3104 (Pa.Quar.Sess.1893) (holding that where a child attained majority and became self-supporting, father's common law liability ceased and could not be restored by a subsequent change in the child's condition); *see also O'Malley*, 161 A. at 884. The public policy behind such rationale is apparent, as there must be a logical end point to a parent's obligation to support his or her child. Otherwise, an adult child

could theoretically sue their elderly parents for support after sustaining a debilitating injury well after reaching the age of majority.

¶ 16 When the disability resulting in the child's inability to be self-sufficient already exists at the time the child reaches the age of majority, however, the presumption is rebuttable by the adult child upon proof that there are "conditions that make it impossible for her or him to be employed." *Hanson,* 625 A.2d at 1214; *see also Kotzbauer,* 937 A.2d at 490. In *Hanson,* John and Nancy Hanson divorced in 1987 by entering into a divorce settlement that acknowledged that their youngest daughter, Mary, "had certain handicaps which impair[ed] her employment capabilities." *Hanson,* 625 A.2d at 1213. In the divorce settlement, the Hansons agreed that they would both keep Mary on their medical and dental insurance plans provided by their employers, but did not otherwise provide any support payments for Mary's care. *Id.* Several years later, after Mary had reached the age of majority, Nancy filed a petition against John seeking child support for Mary, who lived with Nancy and had held several part-time minimum wage jobs. *Id.* In rejecting John's contention that he had no legal duty to pay for the support of his adult daughter, this Court ruled that "[t]here is a duty on parents to support a child that has a physical or mental condition, *which exists at the time the child reaches its majority,* that prevents the child from being self-supporting." *Hanson,* 625 A.2d at 1214 (emphasis added); *see also Kotzbauer,* 937 A.2d 487.

¶ 17 Applying the rule in *Hanson* to this case, when Dustin turned eighteen and completed high school, a . presumption arose that Shaub's legal obligation to pay child support had ended. Because Dustin's psychiatric and medical disabilities existed before he reached the age of majority, however, this presumption was rebuttable upon proof from Dustin that his disabilities prevented him from being self-supporting. Accordingly, the new complaint for child support filed by Style on Dustin's behalf should not have been dismissed as a matter of law.

¶ 18 Despite this determination, we nevertheless affirm the trial court's order denying the request for child support because we agree with the trial court that Dustin failed to present sufficient evidence to rebut the presumption in this case. To rebut the presumption that a parent has no obligation to support an adult child, "the test is whether the child is physically and mentally able to engage in profitable employment and whether employment is available to that child at a supporting wage." *Hanson,* 625 A.2d at 1214, *citing Com. ex. rel. Groff v. Groff,* 173 Pa.Super. 535, 98 A.2d 449 (1953); and *Commonwealth v. Gilmore,* 97 Pa.Super. 303 (1929). The adult child has the burden of proof on these issues. *See, e.g., Verna,* 432 A.2d at 632. Our scope of review is limited to a determination of whether the trial court committed an abuse of discretion or an error of law when making a determination in this regard. *Caplan v. Caplan,* 400 Pa.Super. 352, 583 A.2d 823 (1990); *see also Milne v. Milne,* 383 Pa.Super. 177, 556 A.2d 854 (1989).

¶ 19 With regard to the first part of the test, namely whether the child is physically and mentally able to engage in profitable employment, the trial court found that "the testimony presented on Dustin's behalf [was] neither convincing [n]or complete enough to meet the standard of proof [in this case]." Trial Court Opinion, 9/12/07, at 10. In addition to their own testimony, Style and Dustin offered the expert testimony of Mr. Hogarth, Dustin's vocational evaluator at the

Andrews Center. Mr. Hogarth testified that he had evaluated Dustin's performance of a variety of work tasks over a three-week period and found that Dustin demonstrated adequate oral communication skills, but lacked initiative, motivation and was easily distracted. N.T., 6/1/07, at 18. Mr. Hogarth testified that distractions might be alleviated by medication for ADHD. *Id.* at 19. Mr. Hogarth also noted that he observed improvement in Dustin by the third week of evaluation. Dustin was able to perform a variety of physical tasks, worked slowly but consistently, was punctual, performed a satisfactory amount and quality of work with some supervision, and was courteous and cooperative. *Id.* at 18–21. In sum, although Mr. Hogarth described Dustin "as a person in need of rehabilitative services," *id.* at 27, he opined that he "gave him a guarded diagnosis for successful entry in the workforce at the present time." *Id.*

¶ 20 Style's testimony regarding Dustin's abilities was considerably more negative.[4] She testified that Dustin had an unsuccessful work history, *id.* at 31, that he always "needs a structured environment," and that he requires constant supervision. *Id.* at 33, 37. She further testified that in her view Dustin is not capable of living on his own and that he is not employable. *Id.* at 37–38.

¶ 21 Based upon the testimony presented, the trial court found that Style and Dustin had not proven that Dustin is not able to engage in profitable employment. Trial Court Opinion, 9/12/2007, at 9. The trial court summarized its findings as follows:

> In short, this Court is not certain that Dustin's work history reflects his lack of

ability, but rather a bad choice in employment opportunities. The Court further believes that Dustin is capable of doing a job with a minimally distracting environment and simple repetitive tasks, rather than jobs which required him to be in a varied environment and change quickly from one task to another, particularly on his own initiative.

\* \* \*

Dustin appears to be able to work, albeit at a job which involves consistent behavior and a minimum of distractibility. We all have our limits on the type of job we can perform. Dustin has those limitations, also, but that doesn't mean he cannot work within his limitations.

\* \* \*

Although the Court does not believe it was purposeful, Dustin and his mother have been choosing jobs randomly from the newspaper or internet, rather than trying to find one compatible with Dustin's limitations and needs.

*Id.* at 9–10. Based upon our review of the record, we conclude that the trial court's findings are adequately supported by the evidence presented at the evidentiary hearing, and that the trial court did not abuse its discretion or commit an error of law when making its determination.

¶ 22 With regard to the second part of the test for rebutting the presumption, namely whether employment is available to the child at a supporting wage, the trial court found that Style and Dustin presented little or no evidence in this regard:

---

4. The trial court offered the following observation regarding Dustin's testimony at the evidentiary hearing: "He sat comfortably on the witness stand and answered questions with a demeanor that gave no indication of the problems ascribed to him by his Mother." Trial Court Opinion, 9/12/07, at 10.

[T]he Court lacks the information about Dustin's needs and what he could reasonably make at a job suited to him to enable the Court to calculate whether Dustin can make a supporting wage. Dustin made $6.25 [per hour] at the Pizza Hut and $7.00 [per hour] at the Dollar Store. The Court can assume that Dustin could now make at least minimum wage, which would provide him with a supporting wage, but this would be an assumption only, not a provable fact.

Dustin has the burden of proof in this matter. It is not up to the Court to fill in the blanks in his testimony and supply those elements missing from his case. If expert testimony had been available to describe Dustin's disabilities and their ramifications, there might have been an appropriate conclusion to be drawn. But even Mr. Hogarth, the vocational expert, failed to discuss in detail the types of jobs that might be available.

*Id.* at 11.

¶ 23 Based upon our review of the record, we agree with the trial court that Style and Dustin did not prove what types of jobs Dustin is capable of performing, how much compensation Dustin could reasonably expect to receive from such employment, whether or not such jobs were available in the local marketplace, or whether Dustin could support himself on this level of compensation. As the trial court notes, although Mr. Hogarth gave Dustin "a guarded diagnosis for successful entry in the workforce," N.T., 7/1/07, at 27, he offered no testimony describing the types of jobs Dustin could successfully perform or whether such jobs were then available in the Lancaster County area. Without evidence, we are constrained by our standard of review to affirm the trial court's order denying child support.

¶ 24 Order affirmed.