**Lillis v. Barton**

*Pro se,* for plaintiffs.
*Kathleen Dautrich,* for defendants.

CAMPBELL, *J.,* April 19, 2011—

## I. BACKGROUND

On March 9, 1990, plaintiff filed a complaint against defendant for the support of one minor child , Alan Wylie-Barton (hereinafter "child"), born January 31, 1990. Upon agreement of the parties, the court entered an order for

support against defendant on November 30, 1993.

On October 26, 2007, the domestic relations section mailed plaintiff an emancipation inquiry. The emancipation inquiry asked questions pertaining to, among other things, the date of child's 18th birthday, the date of child's high school graduation, and the existence of child's special needs. Plaintiff returned the emancipation inquiry within the proscribed time. Then, the domestic relations section sent plaintiff a second, substantively identical emancipation inquiry on December 3, 2007. Plaintiff returned the second emancipation inquiry within the proscribed time and also included a letter from the Special Education Department Head at child's school that described the special education services and itinerant learning support services provided to child. On May 23, 2009, upon motion by the domestic relations section, this court terminated the support order pursuant to Pennsylvania Rule of Civil Procedure 1910.19(e)(4).

On May 5, 2010, plaintiff filed a new complaint for the support of child, who was 20 years of age at the time of filing. An initial conference was held on May 28, 2010, and both parities participated. The parties did not reach an agreement at the conference; thus, an interim order was entered and a support hearing was held on July 23, 2010. Based on the support hearing, the support master concluded that defendant was liable for the support of child finding that child's mental disability precludes him from engaging in profitable employment and that employment is not available for him at a supporting wage.

The support master further recommended that the matter be relisted for additional testimony regarding the issue of income/earning capacity.

Defendant filed timely exceptions to the support master's recommendation on September 10, 2010 and on September 13, 2010[1]. Plaintiff and defendant each filed an argument brief, and on March 14, 2011, this court held support argument.

## II. Discussion

Berks County conducts its support proceedings pursuant to Pennsylvania Rule of Civil Procedure 1910.12. Under this procedure, a party who wishes to make legal argument to contest any matters that occurred during the support hearing may file exceptions to the report of the hearing officer (called a "support master" in Berks County). Pa.R.C.P. No. 1910.12(e), (f). The rule is clear that "[e]ach exception shall set forth a separate objection precisely and without discussion." *Id.* at (f).

Defendant's exceptions filed September 10, 2010 are not in compliance with the aforementioned rule. The document cites two Pennsylvania Superior Court decisions, followed by a largely incoherent paragraph consisting of multiple nonsensical sentence fragments. The exceptions are not, by any means, set forth separately and precisely.

---

1. Although defendant's filing on September 13, 2010 exceeded by 1 day the 20 days allotted to file exceptions by Pennsylvania Rule of Civil Procedure 1910.12(f), when the last day of an allotted period falls on a Sunday, such day is omitted from the computation. Pa.R.C.P. No. 106. In the instant case, September 13, 2010 was a Sunday; thus, defendant's filing was timely.

Additionally, they were neither filed by the attorney of record, nor signed by anyone. For these reasons, this court will not review defendant's exceptions filed September 10, 2010.

Defendant also filed exceptions on September 13, 2010. This document clearly identifies defendant's objections to the support master's recommendation in numbered, complete sentences. Thus, this court will review such exceptions and do so by addressing each individually.

*Defendant alleges that plaintiff's complaint for support is barred by the doctrines of res judicata and collateral estoppel.*

The doctrines of res judicata and collateral estoppel are distinct, but related principles. See *C.J. v. Dep't of Pub. Welfare*, 960 A.2d 494, 499 (Pa. Cmwlth. 2008). Res judicata, also known as claim preclusion and technical res judicata, provides that where a final judgment on the merits exists, a future lawsuit on the same cause of action is precluded. *Id.* Collateral estoppel, also known as issue preclusion and broad res judicata, acts to foreclose litigation in a subsequent action where issues of law or fact were already litigated and necessary to a previous judgment. *Id.* The policy behind both doctrines is the furtherance of prompt and efficient administration of the courts' business. *Warthen v. U.S.*, 157 Ct.Cl. 798, 800 (1962). "They are grounded on the theory that one litigant cannot unduly consume the time of the court at the expense of other litigants, and that, once the court has

finally decided an issue, a litigant cannot demand that it be decided again." *Id.*

This court's research discovered, and defendant's brief provided, no precedential decision addressing the issue of whether a court's termination of a support order pursuant to Rule 1910.19(e)(4) has preclusive effect under either doctrine. Though, in *Style v. Shaub,* a recent Superior Court decision and a case procedurally similar to the instant matter, the Superior Court addressed the merits of the case rather than sua sponte raising the issue of preclusion.[2] *Style v. Shaub,* 955 A.2d 403, 408 (Pa. Super. 2008) (approximately one year after termination of a child support order pursuant to Rule 1910.19, the petitioner filed a new complaint for support based on the child's medical and psychiatric limitations). The Superior Court's silence lacks precedential weight, but it is persuasive that a termination order under Rule 1910.19(e)(4) lacks preclusive effect.

Regardless, this court does not find the requirements of the applicable doctrine satisfied. The applicable doctrine in the instant matter is collateral estoppel because defendant is attempting to foreclose litigation in a subsequent child support action on the basis that the parties litigated the issue of emancipation in a previous

2. In *Ruth F. v. Robert B., Jr.,* the Superior Court raised sua sponte the issue of res judicata and stated, "[w]hile this issue was neither briefed on appeal nor raised in the court below, since it effects the jurisdiction of this court to dispose of the matter, we may determine the issue sua sponte." *Ruth F. v. Robert B.,* Jr., 690 A.2d 1171,1175 n.1. (Pa. Super. 1997). See also *United States v. 5 Unlabeled Boxes,* 572 F.3d. 169, 174 (3d Cir. 2009); *State of Arizona v. State of California,* 530 U.S. 392, 412 (2000).

action.[3] The doctrine has several distinct requirements: "(1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment." *Catroppa v. Carlton,* 998 A.2d 643, 646 (Pa. Super. 2010). Assuming arguendo that the other four requirements are met, this court finds that plaintiff did not have a full and fair opportunity to litigate the issue of emancipation.

The Superior Court has deemed Rule 1910.19(e)(4) "essentially a house-keeping rule" enacted to dispose of old orders. *Style,* 955 A.2d at 408. The rule provides the court with administrative authority to terminate support orders based solely on a party's response or lack of response to an emancipation inquiry. Pa.R.C.P. 1910.19(e) (4). In Berks County, the emancipation inquiry is simply a two-page document consisting of six short questions or requests for information created by the domestic relations section that the obligee must complete and return. Prior to the court's decision, there is no hearing, no opportunity

---

3. Courts and practitioners alike commonly use the term "res judicata" when actually referring to collateral estoppel. See *Hebden v. W.C.A.B,* 632 A.2d 1302, 1304 (Pa. Super. 1993). It appears that defendant followed this practice by using the phrase "res judicata," but then only discussed the requirements of collateral estoppel.

for the obligee to present witnesses, and no occasion for the court to determine credibility. *Id.* Rather, the court bases its action solely on the results of the very limited emancipation inquiry. *Id.* Such a cursory briefing of the issue provides the court with adequate information to take administrative action, but it does not provide the parties with a full and fair opportunity to litigate the issue of emancipation.

Furthermore, this Commonwealth has always attributed the utmost importance to the duty and responsibility of parents to financially support their child ren. See *Diehl v. Mulhern,* 594 A.2d 692, 695 (Pa. Super. 1991). This concern far outweighs the limited effect that such holding has on the prompt and efficient administration of the court's business. Also, defendant is not unduly burdened by the procession of plaintiff's complaint since defendant did not issue the emancipation inquires or petition this court for termination. Rather, this was the work of the domestic relations section, and it is wholly possible, even likely, that defendant was unaware of such proceedings or their necessity.[4]

Because plaintiff wasn't given a full and fair opportunity to litigate the issue, because the court's paramount concern is for the welfare of the child, and because the policy concerns that underlie preclusion were not implicated,

---

4. This ignorance is precisely what led to Rule 1910.19(e)'s promu - gation. See Pa.R.C.P. No 1910.19 (2002 Explanatory Comment) ("[M] any obligors are unaware of the necessity of filing a petition to terminate a child support order when the child becomes emancipated.... New sub-division (e) is intended to address this problem....").

this court holds that a termination order pursuant to Rule 1910.19(e)(4) does not warrant preclusive effect under the doctrine of collateral estoppel. Accordingly, this exception is denied.

*Defendant alleges that the support master failed to consider that child has graduated from high school.*

Defendant's position on this matter, as outlined in his brief, is more precisely that plaintiff did not meet her burden of proof when she responded to the emancipation inquires. Clearly, as the court that terminated the original support order, this court agrees with defendant: when plaintiff responded to the emancipation inquiries in 2007, she did not meet her burden of proof. But, this is not the issue at hand. Plaintiff has filed a new complaint for support, and it is plaintiff's new complaint that is before this court. As previously discussed, the instant claim is not barred by this court's prior termination order. Thus, it is irrelevant that plaintiff did not meet her burden of proof when responding to the emancipation inquires. Accordingly, this exception is denied.

*Defendant alleges that the support master erred in entering an order because mother waited approximately 10 months after learning of the support termination before filing a new complaint.*

Defendant has neglected to direct this court to any authority providing grounds to grant this exception. Furthermore, there is no evidence that defendant detrimentally relied on or was prejudiced by this delay,

as would be required to support a finding of equitable estoppel.[5] Therefore, this exception is denied.[6]

*Defendant alleges that plaintiff did not meet her burden of proof that child is disabled by failing to provide competent medical evidence.*

According to 23 Pa.C.S.A. § 4321, "[p]arents *may* be liable for the support of their children who are 18 years of age or older." 23 Pa.C.S.A. § 4321 (emphasis added). In applying this statute, the Superior Court has found a presumption that the duty to support a child ends when the child reaches majority, but that such presumption can be rebutted by showing that the child is too feeble physically or mentally to support himself or herself. See *Style*, 955 A.2d at 403. The test is "whether the child is physically and mentally able to engage in profitable employment and whether employment is available to the child at a supporting wage." *Hanson v. Hanson*, 625 A.2d 1212, 1214 (Pa. Super. 1993). It is the party attempting to rebut the presumption that has the burden of proof. *Style*, 955 A.2d at 409.

In the instant case, plaintiff carries the burden of proof. At the support hearing, plaintiff testified that child is

___

5. The Superior court in *Style v. Shaub*, 955 A.2d 403, 408 (Pa. Super. Ct. 2008), and in *Castaldi v. Castaldi-Veloric*, 933 A.2d 903, 910-11 (Pa. Super. 2010), held that, assuming the doctrine of equitable estoppel applies to support matters, a party asserting the doctrine would have to demonstrate detrimental reliance to prevail.

6. Defendant's argument is precarious: A support order stemming from plaintiff's new complaint would be retroactive to its filing date, not the date of the termination order. Thus, if defendant is found liable for support under the new complaint, he will have had a 10-month vacation from support payments that plaintiff cannot recoup.

autistic with developmental delays, neurological deficiencies, and turrets tendencies. She also stated that his gross and fine motor skills are deficient, his depth perception is deficient, his attention span is poor, and he cannot correctly interact socially.

Plaintiff entered into evidence a letter from child's family physician, Dr. Ron Burinsky, D.O., along with a report completed by Dr. Anthony J. Fischetto, ED. D. of the Bureau of Disability Determination. Both documents detail child's disability and support plaintiff's testimony. Dr. Fischetto's report additionally highlights that child needs an aide just to go to school and requires help with his basic needs, such as personal grooming and hygiene.[7]

The record further indicates that child was approved for Supplemental Security Income (SSI) after he reached the age of majority. According to the federal Social Security Act, an adult is considered disabled for SSI purposes if he or she is unable to engage in *any substantial gainful activity* due to a medically determined physical or mental impairment. 42 U.S.C.A. § 1382c(a)(3)(A) (emphasis added).

In regard to the first part of the Superior Court's test, there is sufficient evidence to conclude that child's disability renders him unable to engage in profitable

---

7. At the support hearing, defendant objected to the admission of both documents as hearsay. The support master overruled defendant's objection and admitted the documents into evidence. Defendant did not file an exception pertaining to this issue. Though, due to the nature of these documents, this court puts little weight in their probative value.

employment: he is autistic, his autism manifests itself in physical and mental deficiencies, he needs assistance with simple tasks, and the federal government deemed him unable to earn an income.[8] It is irrelevant that plaintiff did not provide evidence pertaining to the second part of the test. The Superior Court in *Heitzman-Nolte v. Nolte,* 837 A.2d 1182 (Pa. Super. 2003), held a father liable for support of his blind adult child even though no one "provided information concerning 'employment at a supporting wage.'" *Id.* at 1185 (quoting *Hanson,* 625 A.2d at 1214). The Superior Court based its holding on the fact that the child was not capable of self support, and the court required no evidence of local employment opportunities or potential income. *Id.* Parties have only been required to address the second part of the test when the child is able to engage in some form of profitable employment. See *Style,* 955 A.2d at 409-11. See also *Com. ex rel. Cann v. Cann,* 418 A.2d 403 (Pa. Super. 1980). In the instant case, plaintiff has provided sufficient evidence to support the finding that child is unable to engage in profitable employment, and such a finding is dispositive of the issue at hand. Thus, plaintiff has rebutted the presumption that the duty to support one's child ceases at majority, and this exception is denied.

Defendant alleges that the support master failed to

---

8. It is of little consequence that child held one summer job in 2007 washing dishes and cleaning tables considering that the Pennsylvania Office of Vocational Rehabilitation secured the position for child and child required an aide to complete these menial tasks.

consider *Style v. Shaub*, 955 A.2d 403 (Pa. Super. 2008).

First, the support master devoted a substantial portion of her recommendation to discussing *Style*. Second, *Style* is factually distinguishable from the instant case in substantial ways. In *Style*, the child's own expert testified that the child was able to perform a variety of physical tasks, work consistently, and complete a satisfactory amount and quality of work. *Style*, 955 A.2d at 410. The expert gave the child a "guarded diagnosis for successful entry in the workforce." *Id.* As previously discussed, the evidence in the instant case indicates just the opposite. These factual differences are significant. Thus, the outcome in *Style* is not controlling, and this exception is denied.

In accordance with the above reasons, this court enters the following order:

## ORDER

And now, April 19, 2011, in accordance with this court's accompanying opinion, it is hereby ordered that defendant's exceptions are denied and this matter shall be relisted for additional testimony regarding the issue of defendant's income/earning capacity before Master Kleinfelter.