J. A17037/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JENNIE L. SCHOTTMILLER, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 2549 EDA 2018 |
| | : | |
| GEOFFREY B. GRACE | : | |

Appeal from the Order Entered August 3, 2018,
in the Court of Common Pleas of Bucks County
Domestic Relations Division at No. 2012DR00602

BEFORE: PANELLA, P.J., OLSON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED SEPTEMBER 25, 2019**

Jennie L. Schottmiller ("Mother") appeals ***pro se*** from the August 3, 2018 order entered in the Court of Common Pleas of Bucks County that continued the monthly support obligation of Geoffrey B. Grace ("Father") for the support of the parties' adult child, Abigail Jane Grace ("Abigail"), who attained the age of 18 in July 2018, in the amount of $900 and then reduced the monthly support obligation to $600, effective September 1, 2018; with a further reduction of monthly support to $300, effective November 1, 2018; and termination of monthly support on December 31, 2018 as a result of the trial court's emancipation determination. The August 3, 2018 order also directed Father to reimburse Mother for unreimbursed medical expenses for Abigail in the amount of $2,752.74. We affirm.

The trial court set forth the following:

> [Mother and Father] were married on May 21, 1994
> and had a child together with the [name Abigail]. The
> parties were divorced on September 14, 2004. A
> Complaint for Support was first filed by [Mother] on
> April 23, 2012. Subsequent support issues over the
> years were held before the Honorable Susan Devlin
> Scott and the Honorable James M. McMaster in the
> Bucks County Court of Common Pleas. On March 12,
> 2018, Judge McMaster Ordered that effective
> January 1, 2018, [Father] would be responsible for
> sharing the cost of [Abigail's] psychological
> treatment. The expenses would be shared by the
> parties with [Father] paying fifty-five percent and
> [Mother] paying forty-five percent of the costs. The
> matter which is the subject of this appeal was brought
> before [the trial c]ourt on August 3, 2018 and was
> primarily to make a determination as to whether
> [Abigail] was emancipated. In addition, the [trial
> c]ourt was asked to make a determination regarding
> unreimbursed medical expenses.

Trial court opinion, 10/26/18 at 1.

At the hearing, Mother testified that Abigail "was first diagnosed with anorexia, which was changed to restrictive eating disorder, that she was diagnosed with Obsessive-Compulsive Disorder, and that she has a 'mild diagnosis of cannabis abuse, which she uses for coping.'" (**Id.** at 5 (record citation omitted).) Both Mother and Abigail testified as to Abigail's mental health and her ability to attain employment.

Following the hearing, the trial court entered the August 3, 2018 order. Mother filed a timely notice of appeal. The trial court ordered Mother to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Mother timely complied. Thereafter, the trial court filed its Rule 1925(b) opinion.

Mother raises the following issues for our review:

1.  Future emancipation date: Did the trial court misapply the law and abuse its discretion in setting a future date for emancipation based on speculative events, whereby the two-part test to determine self-support cannot be applied immediately prior to emancipation?

2.  Credit during residential treatment: Did the trial court misapply the law and abuse its discretion in awarding Father a refund of $1,500 for two separate, temporary, 30-day periods of residential treatment?

3.  Deviation of support: Did the trial court misapply the law and abuse its discretion in ordering two staggered downward deviations in future support without a valid, written basis?

4.  Lack of due process: Did the trial court abuse its discretion and violate due process in ruling without affording the opportunity to testify, examine or cross-examine witnesses or present evidence and by failing to rule on the Petition for Modification?

Mother's brief at 2-3.

> In reviewing an order entered in a support proceeding, an appellate court has a limited scope of review. The trial court possesses wide discretion as to the proper amount of child support and a reviewing court will not interfere with the determination of the court below unless there has been a clear abuse of discretion. The function of the appellate court is to determine whether there is sufficient evidence to sustain the order of the hearing judge. An abuse of discretion is not merely an error of judgment; rather, it occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, bias or ill-will.

**Style v. Schaub**, 955 A.2d 403, 406-407 (Pa.Super. 2008) (citation omitted).

> In Pennsylvania, the duty to support a child generally ceases when the child reaches the age of majority, which is defined as either eighteen years of age or when the child graduates from high school, whichever comes later. **Blue v. Blue**, 532 Pa. 521, 616 A.2d 628 (1992). 23 Pa.C.S.A. § 4321(3), however, provides that "[p]arents may be liable for the support of their children who are 18 years of age or older." In applying section 4321(3), this Court has found that there is a presumption that the duty to support a child ends when the child reaches majority:

>> Ordinarily a parent is not required to support his adult child but there is a well recognized exception supported by abundant authority that where such child is too feeble physically or mentally to support itself the duty on the parent continues after the child has attained its majority.

> **Commonwealth ex. rel. O'Malley v. O'Malley**, 105 Pa. Super. 232, 161 A. 883, 884 (Pa. Super. 1932); **see also Verna v. Verna**, 288 Pa. Super. 511, 432 A.2d 630, 632 (Pa. Super. 1981); **Colantoni v. Colantoni**, 220 Pa. Super. 46, 281 A.2d 662, 664 (1971).

**Style**, 955 A.2d at 408.

"When the disability resulting in the child's inability to be self-sufficient already exists at the time the child reaches the age of majority, . . . the presumption is rebuttable by the adult child upon proof that there are 'conditions that make it impossible for her or him to be employed.'" **Id.** at 409. To rebut the presumption, "the test is whether the adult child is physically and mentally able to engage in profitable employment and whether employment is available to the adult child at a supporting wage." **Id.**

(citations omitted). The adult child bears the burden of proof. *Id.* "Our scope of review is limited to a determination of whether the trial court committed an abuse of discretion or an error of law when making a determination in this regard." *Id.* (citations omitted).

Here, because Abigail had turned 18 and completed high school, the presumption arose that Father's legal obligation to pay child support had ended. The presumption, however, was rebuttable by Abigail upon proof that her disability prevented her from being self-supporting. In finding that Abigail failed to rebut the presumption, the trial court explained that

> [t]he Order in this matter takes into consideration the nature of [Abigail's] mental health conditions and is tailored around the treatment that she is receiving and her employment capabilities. While the [t]rial [c]ourt does not wish to minimize [Abigail's] condition(s), and is sympathetic to her issues, the purported condition(s) do not seem equivalent to those referenced in cases in which the rebuttable presumption was met and emancipation was denied. At the hearing on this matter, [Abigail] testified that she was currently going to treatment at Monte Nido in Villanova, PA, which is about forty-five minutes from her house. [Abigail] drove herself to treatment five days per week, and stayed in treatment for about eight hours a day. According to [Abigail's] testimony, this intensive treatment was set to continue for another four to six weeks. Subsequently, [Abigail] would be attending an intensive outpatient program in Villanova for about nine hours per week. Once that was completed, [Abigail] would be going to outpatient treatment in Newtown, close to home, for about two days per week. Based on the information provided, it was clear to the [trial c]ourt that [Abigail's] mental health condition at that time was not a permanent one that would prevent her from acquiring self-supporting employment.

> [Abigail] also testified to her ability to work and that she is planning on attending Bucks County Community College in January. She testified that she does see herself going to college in January of 2019 and getting a part-time job. [Abigail] has previously had two part-time jobs where she was a hostess at an Italian restaurant and a waiter in an "old folks home." This testimony demonstrated the subject child is physically and mentally able to engage in profitable employment and such employment is available to the child at a supporting wage, all of which is directly inconsistent with [Mother's] contention that the child should not be emancipated as it was insufficient to rebut the presumption.
>
> It is the opinion of [the trial c]ourt that [Abigail] has previously found and maintained gainful employment and will soon be able to find self-supporting employment again, despite the fact that her current treatment schedule did not allow time for employment at the time.

Trial court opinion, 10/16/18 at 7-8 (citations to notes of testimony omitted).

Based on these findings, the trial court entered the order that reduced Father's monthly child support obligation over a five-month period, at which time support would terminate due to Abigail's emancipation. Our review of the record compels the conclusion that there is sufficient evidence to sustain the order and that the trial court did not commit an abuse of discretion.

Mother, however, contends that the trial court abused its discretion in setting December 31, 2018 as the emancipation date because the determination was based on "speculative events, whereby the two-part test cannot be applied." (Mother's brief at 23.) Mother notes that "[n]o case authorities demonstrate a reasonable way to predict a future date when an

adult child, unemancipated due to a mental health condition, will become self-supporting and there is no reasonable way to predict this for Abigail." (*Id.* at 30.) By so arguing, Mother asks this court to ignore the factual findings that the trial court made after hearing Abigail's testimony about her progress and future plans and to speculate that Abigail will be unable to support herself in the future. We decline Mother's invitation because this court's function is to determine whether the record contains sufficient evidence to sustain the trial court's order. **See Styles**, 955 A.2d at 406. In this case, it does.

We also note that in her brief, Mother excerpts from the hearing transcript certain comments made by the trial court in an effort to bolster her abuse of discretion claim. In so doing, Mother takes the trial court's comments out of context. For example, Mother claims that the trial court disregarded the two-part emancipation test and determined Abigail's emancipation date because she was capable of "doing things." (Mother's brief at 24.) A review of the transcript, however, reveals that the trial court was merely explaining that in the cases that declined to find emancipation, there were "drastic, drastic, drastic problems for a person that renders them essentially incapable of doing things." (Notes of testimony, 8/3/18 at 10.) By way of further example, Mother claims that the trial court disregarded the emancipation standard that requires a finding that the adult child is capable of being "entirely self-supporting" because the trial court stated that Abigail "doesn't have to be able to support herself completely or fully necessarily." (Mother's

brief at 34-35, citing **Com. ex rel. Cann v. Cann**, 418 A.2d 403, 405 (Pa.Super. 1980).)[1]   A review of the transcript, however, reveals that immediately preceding this comment, the trial court had asked Mother if there was "any kind of a medical report from a treatment provider that addresses the issues about whether [Abigail is] capable of supporting herself in some way" and merely noted that such a report need not state that Abigail is fully self-supporting.  (Notes of testimony, 8/3/18 at 9.)  By way of final example, Mother claims that the trial court disregarded the law and made its decision by doing its self-described "job [of] being 'fair' [and] break[ing] the tie between the parents."  (Mother's brief at 38.)  A review of the transcript, however, reveals that the trial court recognized that Abigail became emotional during her testimony, the trial court assured Abigail that her parents love her, and then the trial court said to Abigail that "when [people] can't come to an agreement, I have to break the tie."  (Notes of testimony, 8/3/18 at 19.)

We further note that despite Mother's allegations of abuse of discretion based on comments that the trial court made at the hearing, the record reflects that Mother never placed any objections on the record.  Therefore, notwithstanding the fact that the trial court's innocuous comments do not support a finding of abuse of discretion, Mother's failure to object to any and all of the statements she now complains about results in waiver of her claims

---

[1] We note an error in the citation that Mother provided for this case, but we were nevertheless able to locate the authority.

on appeal. **See** Pa.R.A.P. 302(a) (issues not raised in the lower court are waived and cannot be raised for the first time on appeal).

Mother next claims that the trial court abused its discretion when it awarded Father a support credit of $1,500 because the credit cannot be supported by the record or by the law.

Here, there is no dispute that Abigail was in a residential treatment facility for two months in 2018. There is also no dispute that Father paid 55 percent of unreimbursed medical expenses for the residential treatment, as well as $900 per month in support during Abigail's inpatient stay. The trial court determined that Father's payment of his share of the unreimbursed medical expenses, together with his child support payments, resulted in a double dip because Abigail's inpatient treatment included the cost of housing and food. (Notes of testimony, 8/3/18 at 8, 25; trial court opinion, 10/16/18 at 9-10.) The trial court further recognized that even though Abigail was in residential treatment, Mother still had household expenses associated with Abigail's support during those two months. (Notes of testimony, 8/3/18 at 25.) As such, the trial court awarded Father a partial credit of the unreimbursed medical expenses that he owed Mother in the amount of $1,500. (**Id.** at 25.) Although Mother is clearly unhappy with the amount of the credit and maintains that the support she provided to maintain the home during Abigail's absence cost her more than $300, we find no abuse of discretion.

Mother next complains that the trial court misapplied the law and abused its discretion when it "order[ed] two staggered downward deviations in future support without a valid, written basis." (Mother's brief at 47.) Mother relies on Pa.R.Civ.P. 1910.16-5(a) that requires the trial court to place, in writing or on the record, its reasons for deviating from the amount of support determined by the guidelines. Mother also cites to **Crawford v. Crawford**, 633 A.2d 155 (Pa.Super. 1993), for the proposition that the guidelines apply to unemancipated adults. (Mother's brief at 48.) Although Mother correctly sets forth the rules of law, they are inapplicable to this case. As the trial court explained,

> the hearing that is the subject of this appeal was not held for the purpose of modifying support and the Order is not a support modification. Rather, the primary focus of this matter was to determine whether [Abigail] was emancipated now that she had turned eighteen and graduated high school. . . .
>
> . . . .
>
> The [trial c]ourt considered the factors set forth above related to emancipation and considered the testimony presented. Based on the lack of evidence showing that [Abigail] was unable to find self-supporting employment, [the trial c]ourt's inclination was to grant the emancipation, but in recognition of [Abigail's] then current treatment schedule, the [trial c]ourt phased out the support payments to [Mother's] benefit, rather than immediately terminating support.

Trial court opinion, 10/16/18 at 10-11. The trial court neither misapplied the law nor abused its discretion.

Mother finally claims that the emancipation hearing violated her due process rights because she was not permitted to present evidence or to cross-examine Abigail and because the trial court did not provide sufficient time for the proceedings. The record belies Mother's claims. When asked what evidence Mother had to establish Abigail's condition and her inability to work, Mother merely stated that she "was under the impression that if [she] brought a letter it would be hearsay and inadmissible, so [she] didn't do that." (Notes of testimony, 8/3/18 at 10.) With respect to cross-examination of Abigail, nothing in the record supports Mother's contention that the trial court precluded either party from cross-examining Abigail. As for Mother's claim that the trial court did not afford sufficient time for the proceedings, the record reflects that the trial court was forced to recess the proceedings because Mother "was under the impression" that Abigail would testify after lunch which made Abigail unavailable when the trial court wanted to hear her testimony.[2] (*Id.* at 11.)[3] We have thoroughly reviewed the hearing transcript, and it fails to support any violation of Mother's due process rights.

---

[2] The record reflects that trial court informed Mother that "[t]hat was a bad idea" and that the trial court "didn't tell you to do that." Mother apologized. (Notes of testimony, 8/3/18 at 11.)

[3] We note that Mother also raises substantially similar complaints that she raised in her second issue on appeal regarding her contention that the trial court misapplied the law in order to support her due process argument. We need not address those arguments again here. Mother also takes various statements made by the trial court and Father's counsel out of context to bolster her due process violation argument. As stated, we have thoroughly

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>9/25/19</u>

---

reviewed the hearing transcript, and it fails to support any violation of Mother's due process rights.