Patricia NICHOLASON, Appellant,

v.

Dent FOLLWEILER, Appellee.

Superior Court of Pennsylvania.

Argued March 23, 1999.

Filed Aug. 2, 1999.

Jon M. Saltzman, Allentown, for appellant.

Roseann B. Joseph, Easton, for appellee.

Before ORIE MELVIN, SCHILLER, and MONTEMURO*, JJ.

ORIE MELVIN, Judge:

¶ 1 Appellant, Patricia Nicholason (Mother), challenges the Order of the Northampton County Court of Common Pleas, which determined that Brett, the parties' minor son, was emancipated and therefore no longer entitled to parental support. We reverse.

¶ 2 The record reflects Mother and Appellee, Dent Follweiler (Father) were married on May 20, 1978 and divorced in 1982. Two children were born during the marriage, namely Dent Follweiler, II on August 15, 1979 and Brett Follweiler on May 2, 1981. Father filed a Petition for Special Relief on April 16, 1998 seeking the termination of the support order for his two sons dated March 20, 1997. At the time of this petition Father was obligated to pay $621.00 in support and $124.00 in arrearages per month. Father's petition alleged that his support obligation should have been terminated as of the dates his sons withdrew from high school. On July 16, 1998 following a hearing on the matter a Domestic Relations Conference Officer filed an order dated July 10, 1998, which reads:

> **AND NOW,** to wit on this 10th day of July, 1998 **IT IS HEREBY ORDERED** that the support order in this case be Terminated without prejudice, effective February 24, 1998, due to: CHILD BRETT FOLLWEILER BORN 5/2/81

NO LONGER ATTENDING HIGH SCHOOL AND BEING ASSUMED EMANCIPATED. CHILD DENT FOLLWEILER BORN 5/15/79 [sic] IS ASSUMED EMANCIPATED AND REMOVED FROM THE ORDER EFFECTIVE FEBRUARY 2, 1998. ORDER CONTINUED TO RUN AT THE AMOUNT OF $621.00 PER MONTH BASIC SUPPORT FOR CHILD BRETT ONLY FOR THE PERIOD OF FEBRUARY 2, 1998, THROUGH FEBRUARY 24, 1998. CASE CLOSED. CREDIT BALANCE OF $1,943.55 TO [MOTHER] REMAINS OF RECORD. WAGE ATTACHMENT IN EFFECT IS VACATED.

¶ 3 Mother filed a timely request for a hearing *de novo* contesting the termination of support for Brett as he is still a minor in need of support. She did not contest the removal of Dent from the order as she acknowledged he is no longer attending high school and is over 18 years old. The *de novo* hearing was conducted on August 5, 1998 following which the matter was taken under advisement pending the submission of briefs. The court subsequently entered an Order on October 5, 1998 affirming the Conference Officer's Order dated July 10, 1998 finding Brett to be emancipated. It is from this Order Mother now appeals.

¶ 4 Mother's sole question presented is "[w]hether or not the trial court abused its discretion [in] declaring a sixteen year old boy emancipated because he quit school, [where] there is absolutely no evidence ... that the minor is capable of self support, and when the evidence ... clearly showed that the minor is not self supporting." Mother's brief at 3.

¶ 5 Our standard and scope of review in child support cases is narrow. Absent a clear abuse of discretion, an appellate court will not disturb a properly entered support order. *Middleton v. Robinson*, 728 A.2d 368 (Pa.Super.1999). "An

* Retired Justice assigned to the Superior Court.

abuse of discretion occurs if insufficient evidence exists to sustain a support award, if the trial court [in reaching a conclusion] overrides or misapplies existing law, or if the judgment exercised ... is manifestly unreasonable." *Thomson v. Rose*, 698 A.2d 1321, 1322–23 (Pa.Super.1997) (citing *Kelly v. Kelly*, 430 Pa.Super. 31, 633 A.2d 218, 219 (1993)).

¶ 6 Mother asserts the trial court erred when it relieved Father of his support obligation by declaring their minor son emancipated. She submits the evidence of emancipation was insufficient as it was merely based upon the fact that he was no longer attending high school and had no physical or mental infirmities that prevented him from working. We agree.

 ¶ 7 Mother correctly notes that in general the parental duty of support continues "until a child reaches 18 or graduates from high school, whichever event occurs later." *Blue v. Blue*, 532 Pa. 521, 529, 616 A.2d 628, 633 (1992); *Hanson v. Hanson*, 425 Pa.Super. 508, 625 A.2d 1212 (1993); *see also*, 23 Pa.C.S.A. § 4321(2). However, this obligation may end sooner where a minor has become emancipated. *Trosky v. Mann*, 398 Pa.Super. 369, 581 A.2d 177 (1990); 23 Pa.C.S.A. § 4323. Emancipation of a child for purposes of the statute governing a parent's liability for support of a child is a question of fact to be determined by the totality of the circumstances presented in each case. *Geiger v. Rouse*, 715 A.2d 454, 458 (Pa.Super.1998). "[T]here are varying circumstances which we must consider in determining whether a child is emancipated. These include, but are not limited to, the child's age, marital status, ability to support himself or herself, and [the] desire to live independently of his or her parents." *Berks County Children and Youth Services v. Rowan*, 428 Pa.Super. 448, 631 A.2d 615, 619 (1993).

 ¶ 8 Instantly, it is apparent the trial court based its finding of emancipation upon the fact that the child dropped out of high school, demonstrated the physical capacity to be employed, and did not seek his Mother's approval concerning his whereabouts. These facts without more do not establish emancipation. From our review of the cases dealing with emancipation generally, we perceive the touchstone of emancipation refers to the minor's establishment as a self-supporting individual independent of parental control. When a minor still has a need for care, custody and maintenance, the minor is not emancipated and the duty of support continues.

 ¶ 9 In *Trosky v. Mann*, 398 Pa.Super. 369, 581 A.2d 177 (1990) we were asked to determine whether a 16–year–old boy was emancipated under circumstances which included a pattern of destructive, disobedient and criminal behavior. In this case the boy removed himself to a youth shelter and indicated his desire to sever all ties with his adoptive parents. The children's home sued for support on behalf of the boy to recover the cost of his residence and treatment. We determined that despite the child's and the parents' shared intent to extinguish filial bonds, the boy was not emancipated because the record was devoid of any evidence that he was self-supported. Similarly, in *Maurer v. Maurer*, 382 Pa.Super. 468, 555 A.2d 1294 (1989), *appeal denied*, 522 Pa. 596, 562 A.2d 320 (1989), we reversed a trial court finding of emancipation in the context of support for college educational expenses, where we held that the critical test is whether the child is dependent on his parents for support or is independent of such needs. Consequently, economic self-sufficiency is a critical factor to be considered in determining a child's emancipation.

¶ 10 Our review of the instant record reveals no evidence to suggest this minor is self-supporting or that he even sought to be financially independent. In this regard in response to Mother's counsel's direct examination, the minor testified as follows:

Q. Okay. Since you quit school, have you had any jobs?

A. Yes, I have.

Q. Can you tell us who you worked for and when?

A. I worked at the Ritz and that was, that was – I can't remember.

Q. How long were you there?

A. About a week. I worked at Dunderbak's for a month and a half at the Lehigh Valley Mall and that was the last job I had.

Q. How much did you make per week in your pocket after taxes when you worked at the Ritz?

A. I made $80 a week.

Q. How much did you make, how much did you make when you worked at Dunderbak's at the mall ... ?

A. Well, we got paid every two weeks and I made like about a $200 paycheck.

\* \* \* \*

Q. ... Have you ever supported yourself?

A. No.

Q. Have you ever made enough to pay for an apartment or a room so you could live somewhere?

A. No.

Q. Have you ever made enough so that you could feed yourself?

A. No.

\* \* \* \*

Q. And you're living still with your mother?

A. Yes, I am.

N.T., *De Novo* Hearing, 8/5/98, at 12–15.

¶ 11 Economic self-sufficiency means more than the mere physical ability to perform a job. The undisputed evidence of record clearly showed that the minor continued to reside with his Mother and that she was paying for his food, clothing, shelter and other basic necessities of life. The minor further testified that due to the fact that he was under 18 years of age he was summarily rejected for employment by the various mall establishments. The mere fact the minor held minimum wage jobs for a period of six or seven weeks after quitting school does not constitute the self-sufficiency contemplated by the concept of emancipation.

¶ 12 We further note our review of the record indicates that both the Conference Officer and the Hearing Judge began their inquiry by relying on the misplaced notion that a minor who quits high school is "assumed" to be emancipated. Such is not the case. The fact a minor quits high school over his parents' objections does not, standing alone, equate with emancipation. We acknowledge that when a child reaches majority (and has also completed high school), the duty of the parent to support that child ends. *Crawford v. Crawford*, 429 Pa.Super. 540, 633 A.2d 155, 160 (1993). However, prior to the age of majority, the converse is true; there is a presumption against emancipation, and the burden of establishing the emancipation by competent evidence falls upon the party asserting the emancipation. Here it was the Father who was seeking a determination that his son was emancipated, and yet he chose not to present any evidence at the *de novo* hearing. Accordingly, we find this presumption was not overcome, and the trial court abused its discretion in finding this child was emancipated. In fact the evidence of record only supports a contrary conclusion. The trial court's Order ostensibly relieved both parents of their duty of support, but in actuality shifted the full responsibility to the Mother. Under these circumstances, the Father's support obligation should have continued. We therefore reverse the trial court's determination of emancipation and vacate the Order of October 5, 1998. We further reinstate the March 20, 1997 support order as it relates to Brett Follweiler and remand for a determination of the arrearages due thereunder from the date of Father's last support payment until either such time as Brett Follweiler is no longer living with Mother or reaches majority.

¶ 13 Order vacated. Case remanded. Jurisdiction relinquished.