Robert J. CASTALDI, Appellant

v.

Carolyn A. CASTALDI–VELORIC,
Appellee.

Superior Court of Pennsylvania.

Argued Jan. 26, 2010.
Filed March 17, 2010.
Reargument Denied May 26, 2010.

**904**

Robert J. Castaldi, appellant, Pro Se.

Mindy A. Harris, Media, for appellee.

BEFORE: STEVENS, MUNDY, JJ., and McEWEN, P.J.E.

OPINION BY STEVENS, J.:

¶ 1 Father appeals *pro se* from the Order entered in the Court of Common Pleas of Delaware County, which dismissed his petition to modify the termination date of his child support obligation and arrears as it relates to his now adult daughter, Stephanie. On appeal, Father contends that, since Mother failed to respond to emancipation inquiries, the Delaware County Domestic Relations Office (Domestic Relations Office) properly terminated child support as to Stephanie on January 17, 2007, which was her eighteenth birthday. Father further contends that the Domestic Relations Office was not permitted to subsequently modify the termination date to reflect the date of Stephanie's graduation from high school, which was June 14, 2007. After a careful review, we affirm.

¶ 2 The relevant facts and procedural history are as follows: The parties, who were formerly husband and wife, are parents to two children, Robert, who was born on October 23, 1984, and Stephanie, who was born on January 17, 1989. Initially, the trial court ordered Father to pay $339.50 bi-weekly for both children's support; however, in November of 1990, Mother filed a petition to modify and increase the child support, and the trial court increased Father's support obligation to $425 bi-weekly for both children. Thereafter, Father filed petitions seeking to modify and reduce his child support obligation, and eventually, Father's support obligation was reduced to $115 per week for both children's support.

¶ 3 On August 21, 2003, Father filed a petition to modify the support order, and following a hearing held on October 2, 2003, the master set Father's monthly support obligation at $315.36 for Stephanie,[1] with an arrearage of $1789.20. On October 14, 2003, Father filed a petition for an appeal to the trial court from the master's order. Apparently, at some point, Father was imprisoned, and the trial court dismissed the appeal without prejudice. On March 4, 2005, Father filed a petition to reinstate his appeal of the support order, and by order entered on May 16, 2005, the trial court indicated Father was to pay $42.78 per week for the support of Stephanie, all other expenses split 50/50, with an effective date of August 21, 2003.

¶ 4 Beginning in October of 2006, the Domestic Relations Office sent emancipation inquiries to the parties with regard to Stephanie, who was going to turn eighteen

---

1. By this time, Robert, who had reached his eighteenth birthday and graduated from high school, was emancipated for child support purposes.

years old on January 17, 2007. Mother failed to respond to the emancipation inquiries; however, Father provided information concerning Stephanie's date of birth. Father was unsure as to the date Stephanie was going to graduate from high school. At some point, the Domestic Relations Office terminated child support for Stephanie, effective the date of her eighteenth birthday. However, Mother subsequently contacted the Domestic Relations Office and informed personnel that Stephanie had graduated from high school on June 14, 2007. Believing Stephanie's child support should have continued until the date she graduated from high school, Mother requested the Domestic Relations Office modify the termination date of Stephanie's child support to June 14, 2007. The Domestic Relations Office agreed and changed the termination date to reflect the date of Stephanie's graduation from high school. The Domestic Relations Office then "tacked" onto Father's account the child support payments he should have made from January 17, 2007 to June 14, 2007.

¶ 5 Father filed a petition to modify the termination date of his child support obligation and arrears with regard to Stephanie, and a hearing was held before a master on October 31, 2008. Concluding child support for Stephanie was properly terminated when she graduated from high school on June 14, 2007, the master indicated that, with regard to the review of emancipation, the "Order is Correct–Review is Dismissed."

¶ 6 On November 14, 2008, Father filed a petition for a hearing *de novo* in the trial court, and a hearing was held on January 27, 2009. At the hearing, the following relevant exchanges occurred:

OFFICE OF SUPPORT ENFORCEMENT: There is a suspended Order and the Defendant's ordered to pay off arrears of $1,335 owed to the Plaintiff at the rate of $384.94 a month. This is the Defendant's appeal. And the issue of his appeal is when the Order for the last child should be suspended. It was suspended June 14, '07. And he thinks it should be January 17 of '07.

THE COURT: Okay.

\* \* \*

THE COURT: When did this child graduate from high school? . . . .

OFFICE OF SUPPORT ENFORCEMENT: June 14, 2007.

THE COURT: And how old was she at that time?

[FATHER]: 18.

THE COURT: Okay. So [Father], why do you think it should have been January instead of June?

\* \* \*

[FATHER]: Your Honor, as far as the emancipation inquiry, that was sent out to [Mother] four times from October of '06 through January '07. She failed to respond to it. I called Domestic Relations to find out what was going on, because I was getting copies.

THE COURT: Right.

[FATHER]: They asked me—or I asked them if I should provide the information since she was not replying to it. They said I'm under no obligation but I could if I wanted to. I gave them my daughter's date of birth. At that point I had no idea when my daughter was graduating.

THE COURT: What was her date—when did she become 18?

[FATHER]: January 17, 2007.

\* \* \*

THE COURT: Well let me ask you this, sir. You're depending on that rule[2] you just quoted to me to have the support Order terminated on the 18th birthday of the child.

[FATHER]: Yes, Your Honor.

THE COURT: Which was about five or so months before she graduated from high school, right?

[FATHER]: Yes, Your Honor. The Order was terminated then. Domestic Relations terminated it....15 months later [Mother] came into Domestic Relations Office with the diploma. It was either the end of March, beginning of April, 2008.

THE COURT: Right, and what? You mean the Order kept running?

[FATHER]: I had arrears to pay ... All of a sudden I opened up my ...

THE COURT: It looks like you still have some arrears.

[FATHER]: Well, Your Honor, that arrears—the arrears is still showing—there's 900 and some dollars showing.

THE COURT: Does that represent the period of time between January and June, okay?

[FATHER]: Yes. There was $1,680.32 added on.

THE COURT: All right.

[FATHER]: So the arrears right now, according to PACES, is $934.95.

THE COURT: All right....

[FATHER]: In other words, she's gotten $745.37 in addition from when they initially terminated the Order.... Now 15 months later she comes to Domestic Relations, hands them a diploma, and they unilaterally add $1,600. I open up my statement thinking I'm going to make my next to last payment, you know, I know I've got a little more than what I've been paying every two months—or every month, to balance it out I'm going to split that difference. And I'm going to pay it off in a month. And bang, I've got $1,600 more that I owe. I call and they say, look, we have made a mistake so we added it. That brings up Title 23, Section 4352(e), retroactive modification of arrears. In order to retroactively add this amount on she would have had to file a Petition at the time the Order was terminated. Now she had four notices, all of which told her if she did not respond they may terminate the Order. She did not respond. This is her practice....

\*     \*     \*

THE COURT: So you're saying they terminated the Order after the child graduated, at some point, and you think they added back on this extra money?

[FATHER]: No, Your Honor, they terminated the Order when she turned 18 because [Mother] did not respond to the emancipation inquiry. Then 15 months later, in March or April of 2008, [Mother] came in with the diploma.

THE COURT: Okay.

[FATHER]: They tacked on these additional monies without a hearing, without a Petition, nothing, just—I found out because I opened an envelope.

OFFICE OF SUPPORT ENFORCEMENT: Your Honor, his Petition may have some merit if, indeed, the Plaintiff received the notices from Domestic Relations regarding the emancipation. Stand up and explain to His Honor why you didn't get the notice from Domestic Relations.

[MOTHER]: Your Honor, we were moving and we moved in November. And I filled out the forward your mail thing from the Post Office. For an entire

---

**2.** During the discussion, Father mentioned     Pa.R.C.P. 1910.19.

month they couldn't find our mail. It wasn't here or there. I didn't receive anything in January, after Stephanie's birthday, but did receive one and I did return it.

THE COURT: All right.

OFFICE OF SUPPORT ENFORCEMENT: You returned it to Domestic Relations here?

[MOTHER]: I did.

THE COURT: Okay, all right. . . . I'm finished here. I'm denying your appeal. It's obvious to me that the law says that a person is owed support until the child is 18 or graduates from school. That's the law. It's not—and I don't think any kind of procedural lapse is going to entitle somebody to forfeit what they're owed under the law. So your appeal is denied. . . . The master's report is reinstated.

N.T. 1/27/09 at 3–11, 13–16 (footnote added).

¶ 7 By order entered on February 26, 2009, the trial court denied Father's appeal, indicating the master's recommendation "stands." Father filed a timely notice of appeal to this Court, and on March 23, 2009, the trial court ordered Father to file a Pa.R.A.P. 1925(b) statement.[3] On April 13, 2009, Father filed a timely Pa.R.A.P. 1925(b) statement, and the trial court filed a responsive Pa.R.A.P. 1925(a) opinion.

¶ 8 Father contends that, once Mother failed to respond to the emancipation inquiries, the Domestic Relations Office properly terminated child support as to Stephanie on her eighteenth birthday, which was January 17, 2007. Father further contends that the Domestic Relations Office was not permitted to subsequently

modify the termination date to reflect the date of Stephanie's graduation date from high school, which was June 14, 2007, without giving Father notice and an opportunity to be heard. Father specifically suggests that Mother's inaction with regard to the emancipation inquires estopped her from subsequently seeking to have the termination date modified to Stephanie's graduation date, and in any event, once child support was terminated on Stephanie's eighteenth birthday, Mother should have been required to file a petition to have the termination date modified to reflect the date of Stephanie's graduation.

¶ 9 We first examine whether it was proper to initially terminate the charging child support order on Stephanie's eighteenth birthday, which fell on January 17, 2007.

¶ 10 Pa.R.C.P. 1910.19(e) provides the following:

**Rule 1910.19. Support. Modification. Termination. Guidelines as Substantial Change in Circumstances**

\* \* \*

(e) Within one year of the date a child who is the subject of a child support order reaches eighteen (18) years of age, the domestic relations section shall issue an emancipation inquiry and notice to the obligee, with a copy to the obligor, seeking the following information:

(1) confirmation of the child's date of birth, date of graduation or withdrawal from high school;

(2) whether the child has left the obligee's household and, if so, the date of departure;

(3) the existence of any agreement between the parties requiring payments

---

**3.** The trial court indicated in its Pa.R.A.P. 1925(b) order that Father was required to file his statement within 20 days after the entry of the court's order. However, we note that Pa.R.A.P. 1925(b) provides that an appellant shall have 21 days for the filing and service of a statement.

for the benefit of the child after the child has reached age eighteen (18) or graduated from high school; and

(4) any special needs of the child which may be a basis for continuing support for that child beyond the child's eighteenth birthday or graduation from high school, whichever is last to occur.

The notice shall advise the obligee that if the inquiry is not returned within thirty (30) days of mailing or if there is no agreement or the child does not have any special needs, the charging order may be modified or terminated by the court. **When no other children are subjects of the child support order and the obligee either does not return the emancipation inquiry within thirty (30) days of its mailing or does not assert grounds for continuing support for the child, then the court shall have the authority to administratively terminate the child support charging order without further proceedings at any time on or after the last to occur of the date the last child reaches age eighteen (18) or graduates from high school.** Termination of the charging order shall not affect any arrears accrued through the date of termination. The court shall have the authority to enter an order requiring the obligor to pay on arrears in an amount equal to the amount of the charging order until all arrears are paid.

If the order applies to another child or children and/or the obligee asserts that there is an agreement between the parties or that a child has special needs requiring continued support, then the domestic relations section may schedule a conference to determine if the charging order should be modified.

*　　*　　*

Pa.R.C.P. 1910.19(e) (emphasis added).

¶ 11 Recently, in *Style v. Shaub*, 955 A.2d 403 (Pa.Super.2008), this Court examined Rule 1910.19(e) with regard to the circumstances under which the trial court may properly terminate a pre-majority charging child support order. In *Style*, a support order was in place for the parties' child, Dustin, who turned eighteen on January 3, 2005. The Lancaster County Domestic Relations Office sent emancipation inquiries to the parties and, after the parties failed to respond, child support was terminated on July 14, 2005 with regard to Dustin, who had graduated from high school in July of 2005. In concluding the trial court was permitted to terminate child support under Rule 1910.19(e) after Dustin had turned eighteen and graduated from high school, we stated the following:

In this case, we first note that the original (pre-majority) child support order was properly terminated pursuant to Rule 1910.19(e). Rule 1910.19(e), adopted on October 11, 2002, provides a mechanism for termination of child support orders when the child becomes an adult. It requires the domestic relations section, within one year from the date when the child will reach eighteen, to issue an "inquiry" requesting relevant information regarding whether child support should be continued. If no response is received or if grounds are not asserted that would justify the continuation of child support, then the trial court may terminate the child support order without further proceedings.

The explanatory comment provides insight into the reason for Rule 1910.10 [1910.19](e):

Although support orders do not terminate automatically, many obligors are unaware of the necessity of filing a petition to terminate a child support order when the child becomes emancipated. As a result, old orders have continued to charge long after the

subject child has become an adult. New subdivision (e) is intended to address this problem by giving the obligee notice of a proposed modification or termination of the order and the opportunity to object. If no objection is made, or the obligee fails to respond with a reason to terminate or modify the order, the rule gives the court the authority to terminate or modify the charging order, depending upon whether or not other children are covered under the order.

Pa.R.C.P. 1910.19 (2002 Explanatory Comment).

Rule 1910.19(e) is essentially a housekeeping rule established to terminate "old orders [that] have continued to charge long after the subject child has become an adult." *Id.* After proper notice of termination and an opportunity to object, a trial court may then enter an order terminating the child support order.

*Style,* 955 A.2d at 407–08 (footnote omitted).

¶ 12 As is evident, in *Style,* the Domestic Relations Office sent emancipation inquiries to the parties with regard to Dustin. After the inquiries went unanswered, and Dustin had turned eighteen, as well as had graduated from high school, the trial court entered an order terminating the pre-majority charging child support order. In the case *sub judice,* the Domestic Relations Office likewise sent emancipation inquiries, which went unanswered by Mother. Father provided information with regard to Stephanie's birth date but was unable to provide information with regard to her date of graduation from high school. However, unlike in *Style,* the charging child support order was initially terminated effective the date of Stephanie's eighteenth birthday, which was approximately five months prior to

her graduation date from high school. We conclude that, pursuant to Rule 1910.19(e), the charging child support order was initially prematurely terminated.

¶ 13 The plain language of Rule 1910.19(e) provides that the Domestic Relations Office shall issue emancipation inquiries seeking information as to, *inter alia,* the child's date of birth, date of graduation or withdrawal from high school. Pa.R.C.P. 1910.19(e)(1). Thereafter, when no other children are subjects of the child support order and the obligee either does not return the emancipation inquiry or does not assert grounds for continuing support, the charging support order may be terminated "without further proceedings at any time **on or after the last to occur** of the date the last child reaches age eighteen (18) or graduates from high school." Pa.R.C.P. 1910.19(e) (bold added). Rule 1910.19(e) unambiguously states that such an act arises from an administrative authority, and we recognized the Rule's intent in *Style.*

¶ 14 Here, the charging child support order was initially terminated with regard to Stephanie effective the date of her eighteenth birthday (January 17, 2007), which was approximately five months prior to the date she graduated from high school. Since Stephanie had not yet graduated from high school, it was premature for the charging child support order to be terminated administratively effective the date of her eighteenth birthday. Thereafter, when Mother brought the administrative error to the attention of the Domestic Relations Office, the administrative error was corrected to reflect the "last to occur date," which was the date then eighteen-year-old Stephanie had graduated from high school. Pa.R.C.P. 1910.19(e).

¶ 15 We agree with the trial court that an administrative error initially occurred,

and the error could be corrected administratively subject to court review. As the trial court indicated:

> An administrative change ... is a ministerial activity that is subject to change if it was incorrectly entered. Furthermore, ... the administrative change is subject to the overriding preference in the law that support should continue [in this case] until high school graduation. If the administrative order was entered incorrectly, it can be administratively corrected, subject to judicial review. This Court has reviewed the correction and finds that the Domestic Relations department acted correctly in conforming with the applicable legal principles.

Trial Court Opinion filed 5/1/09 at 4–5.

■■ ¶ 16 In addition, we agree with the trial court that the correction of the administrative error in the absence of Mother filing a petition did not violate 23 Pa. C.S.A. § 4352(e), which provides, in relevant part, the following:

> § 4352. **Continuing jurisdiction over support orders**
>
> \*　　\*　　\*
>
> (e) **Retroactive modification of arrears.**—No court shall modify or remit any support obligation, on or after the date it is due, except with respect to any period during which there is pending a petition for modification. If a petition for modification was filed, modification may be applied to the period beginning on the date that notice of such petition was given, either directly or through the appropriate agent, to the obligee or, where the obligee was the petitioner, to the obligor. However, modification may be applied to an earlier period if the petitioner was precluded from filing a petition for modification by reason of a significant physical or mental disability, misrepresentation of another party or other compelling reason and if the peti-

tioner, when no longer precluded, promptly filed a petition. In the case of an emancipated child, arrears shall not accrue from and after the date of the emancipation of the child for whose support the payment is made.

23 Pa.C.S.A. § 4352(e) (bold in original).

■ ¶ 17 As this Court has noted, "[a]s it is titled 'Retroactive Modification of Arrears' the plain text indicates this subsection refers only to those cases where arrears are at issue." *Kelleher v. Bush*, 832 A.2d 483, 485 (Pa.Super.2003). Since Section 4352(e) applies only to arrears, the retroactivity issue in this case, related to whether the Domestic Relations Office should have altered the termination date of the charging support order, resulting in Father paying an additional five months of child support, is not governed by Section 4352(e).

■ ¶ 18 Moreover, we disagree with Father that Mother was estopped from seeking to correct the administrative error since she did not respond to the emancipation inquiries. In *Style*, with regard to estoppel, we held the following:

> Although the pre-majority child support order was properly terminated pursuant to Rule 1910.19(e), we do not agree with the trial court that Style was estopped from filing a new request for support. Without determining the applicability of the doctrine of equitable estoppel generally to issues of child support like the one presented here, it is clear that under the law of Pennsylvania, a finding of estoppel must be based upon a demonstration of detrimental reliance by the party asserting the doctrine.

*Style*, 955 A.2d at 408 (citation omitted).

¶ 19 In the case *sub judice*, as indicated *supra*, the charging child support order was not initially properly terminated in

that it was terminated prematurely, effective the date of Stephanie's eighteenth birthday. Moreover, we conclude that Father did not offer evidence to show any detrimental reliance on his part to the initial improper termination of the support order. While Father suggests it is "unfair" that the Domestic Relations Office corrected an administrative error made in his favor, the result is Father is being held to pay child support for Stephanie until the date she graduated from high school, which is mandated in Pennsylvania. *See Style,* 955 A.2d at 408 ("In Pennsylvania, the duty to support a child generally ceases when the child reaches the age of majority, which is defined as either eighteen years of age or when the child graduates from high school, whichever comes later.") (citation omitted).

¶ 20 Finally, Father suggests Stephanie was "emancipated" when she reached the age of eighteen. To this end, he indicates Stephanie has "expressed an undeniable desire to live independent of [Father]," has alienated herself from him, and has denied him access to her school records. *See* Father's Brief at 26–27. Father is correct that a child support obligation may end sooner than when a child reaches age eighteen or graduates from high school where the minor has become emancipated. *See Nicholason v. Follweiler,* 735 A.2d 1275 (Pa.Super.1999); 23 Pa. C.S.A. § 4323(a). However, we disagree with Father that Stephanie was "emancipated" during the five months between her eighteenth birthday and high school graduation for child support purposes.

Emancipation of a child for purposes of the statute governing a parent's liability for support of a child is a question of fact to be determined by the totality of the circumstances presented in each case. [T]here are varying circumstances which we must consider in determining whether a child is emancipated. These include, but are not limited to, the child's age, marital status, ability to support himself or herself, and [the] desire to live independently of his or her parents.

*Nicholason,* 735 A.2d at 1278 (citation, quotation, and quotation marks omitted).

¶ 21 In the case *sub judice,* while Stephanie appears to have been alienated from Father, there is no evidence of such alienation with regard to Mother. Simply put, there is no evidence that, during the relevant time period, Stephanie lived separate from Mother, had the ability to support herself, or expressed a desire to live independently of Mother. Therefore, we find no merit to Father's final contention. *See id.*

¶ 22 For all of the foregoing reasons, we affirm.

¶ 23 Affirmed.

¶ 24 P.J.E. McEWEN filed a Concurring Statement.

¶ 25 Judge MUNDY joins in the Majority Opinion by Judge STEVENS and joins in the Concurring Statement by P.J.E. McEWEN.

## CONCURRING STATEMENT BY McEWEN, P.J.E.:

¶ 1 Since the Opinion of the majority reveals a thorough analysis and presents a perceptive expression of rationale, I hasten to join in the decision of the majority. I write separately only to state that, to my mind, it seems rather clear that mother's failure to respond to the inquiries of the Domestic Relations Office relating to the child's emancipation should not result in a windfall to father, where, as perceptively concluded by the learned Judge Michael

F.X. Coll, the child was entitled to support payments until her graduation.