J-S02043-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KARYN MARIE LODISE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWARD JOHN GONZALEZ | : | |
| | : | |
| Appellant | : | No. 1335 EDA 2025 |

Appeal from the Order Entered April 30, 2025
In the Court of Common Pleas of Bucks County
Domestic Relations at No: 200663181

BEFORE:  NICHOLS, J., MURRAY, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MARCH 12, 2026**

Edward John Gonzalez (Father) appeals from the order which determined that he was obligated to pay child support for his adult son (Child), who was 19-years-old when the order was entered.  After careful consideration, we reverse the determination and vacate the order.

Child was born on March 9, 2006 to Father and Karyn Marie Lodise (Mother).  While Child was under the age of 18, the parties had "a private agreement" regarding child support.  Trial Court Opinion (TCO), 10/7/25, at 2.  It is undisputed that Father paid child support of $693.33 per month for 18 years, from 2006 until 2024.  *See* N.T., 4/25/25, at 6.  It is also undisputed that Father stopped paying child support in May 2024, two months after Child's 18th birthday.  *Id.*  Approximately eight months later, on January 24, 2025, Mother filed a complaint for child support.

On March 18, 2025, the parties appeared for a conference before a Domestic Relations Officer (DRO). The DRO issued a conference summary which stated:

> Child … reached the age of 18 on 3/9/24 and attended the high school graduation ceremony on 6/10/24[,] but was short two (2) credits needed for the diploma. The plan was for [C]hild to return to school in September 2024 to complete the missing credits, but [he] did not follow through with the plan. [C]hild did not return to school in September 2024.
>
> **Issues Agreed Upon and Disputed**:
>
> [Father] argues [C]hild is emancipated. [C]hild has his driver's license and works with Door Dash when he visits [Father]. [Mother] does not agree and represented his special needs prevent him from attending school. [Mother] did not provide any proof of the special needs.
>
> **Recommendation:**
>
> It is recommended the Complaint for Child Support filed 1/24/25 be denied [because C]hild is emancipated pursuant to Pa.R.Civ.P. 1910.19(e); [C]hild reached his 18th birthday on 3/9/24 and is not in high school.

Summary of Trier of Fact (Pa.R.Civ.P. 1910.11(e)), 3/18/25, at 2.

Mother subsequently requested a *de novo* hearing before the trial court. *See* Pa.R.Civ.P. 1910.11(i). The trial court held a hearing on April 25, 2025, and heard testimony from three witnesses: Mother; Father; and Leah Batchis, an attorney Mother "retained for special education legal services and advice." N.T. at 18.

*Mother*

Mother testified that Child had difficulty with school due to "[g]eneralized anxiety disorder, ADHD, [and] depression." *Id.* at 12. She

- 2 -

relayed that Child had "these issues" since third or fourth grade. *Id.* at 13. According to Mother, the Central Bucks School District was not properly addressing the issues. *Id.*

Mother testified that Child had begun his senior year at Central Bucks East High School in the fall of 2023, and was tardy 59 days of the 2023-2024 school year. *Id.* at 14, 22. She stated that in June 2024, at her request, Child "walk[ed] in th[e] graduation ceremony," but did not graduate. *Id.* at 7. Mother testified that Child was enrolled at Central Bucks East during the 2024-2025 school year, but had not attended school "since the fall of 2024." *Id.* at 16, 20. When Father's counsel asked Mother whether Child was "supposed to be going to school," Mother replied that Child was "supposed to be offered the services that are outlined in his [Individualized Education Plan (IEP)], which has not happened." *Id.* at 20.

Over the objection of Father's counsel, Mother introduced three documents related to Child's IEP. *Id.* at 11. The documents were marked M-1 ("reevaluation report" dated March 14, 2024); M-2 ("notice of recommended educational plan" dated April 26, 2024); and M-3 ("IEP update" dated May 10, 2024). *Id.* at 8-11. The exchange between Father's counsel and the trial court regarding the admissibility of the documents was brief:

| | |
|---|---|
| [Father's Counsel]: | Objection, Your Honor, to all three. |
| THE COURT: | Pardon? |
| [Father's Counsel]: | Hearsay. |
| THE COURT: | That objection is overruled. |

(Documents handed to the Court .)

THE COURT:          M-1, M-2 and M-3 are all admitted.

*Id.* at 11.[1]

Mother testified that Child's anxiety causes him to have headaches, panic attacks, and nausea, which "especially in the morning hours, prevent him from getting to school on time and getting to school and staying in school." *Id.* at 13, 15. Mother stated that in October 2023, she hired Leah Batchis, Esquire, "[b]ecause the school wasn't providing the Free Appropriate Public Education that was outlined in [Child's] IEP," and "they were not going to provide flexibility around his attendance and his tardiness." *Id.* at 14.

Mother testified that Child's IEP was updated in May 2024, when "[i]t was determined that he would continue on" and "return for a 13th year." *Id.* at 11. However, Mother stated that "no supports were offered" during the 2024-2025 school year. *Id.* at 24. She added, "there hasn't been a program or supports in place this school year, and I have been helping him to find an alternate education plan." *Id.* at 25. She explained that Child was accepted at TCHS, but "because he was out of the county and out of a reciprocal agreement with the school that he was then not accepted." *Id.* at 26.

Father's counsel asked Mother:

_____

[1] Mother introduced three additional exhibits without objection: M-4 (invitation to an IEP meeting on May 2, 2025 addressed to Mother; M-5 (invitation to an IEP meeting on May 2, 2025 addressed to Father); and M-6 (Child's application to Technical College High School (TCHS) dated September 7, 2024, with related emails between Mother and representatives of TCHS dated September 11, 2024). *Id.* at 15-18.

**Q** So it sounds like had [Child] gone to [Bucks County East] on time, as he was supposed to, he would have graduated [in 2025], correct?

**A** He would have earned a minimal number of credits to graduate, but with an IEP he's entitled to an appropriate education for his specific needs, which could extend beyond just a minimum number of credits.

*Id.* at 24-25.

Mother testified that at the time of the hearing, Attorney Batchis was "continuing with negotiations with Central Bucks School District," and Mother was "hopeful" for a resolution that did not include Child attending Central Bucks East High School.[2] *Id.* at 18.

During cross-examination, Mother testified that Child was not taking any medication. *Id.* at 27. She confirmed that Child had "superior range" standardized test scores and described him as "very intelligent." *Id.* at 22-23. Mother also testified that Child earned income delivering food for Door Dash. *Id.* at 19. Mother further confirmed that Child has a car, drives, and has friends. *Id.* at 27-29. She stated, "[Child] likes to hit baseballs. He likes to watch sports. He likes to play video games. He likes to cook." *Id.* at 29. However, Mother also stated, "[i]n my opinion, he's physically unable to work full-time." *Id.* at 28.

In sum, Mother testified that Child had not graduated from high school; Child was enrolled but did not attend school during the 2024-2025 school

_____

[2] Mother stated that she was seeking "a potential settlement with the school district" that "would involve funding to reimburse [her] cost for sending him to an alternate program such as TCHS." *Id.* at 18.

year; Mother was continuing to pursue "free and appropriate public education" for Child; and Child was not capable of supporting himself.

*Attorney Batchis*

Attorney Batchis testified that Mother retained her in "January or February of 2024[3] … because she was worried [Child] was not receiving appropriate special education services." *Id.* at 36. Ms. Batchis stated that Child was "still enrolled and he's still eligible for special education." *Id.* She also corroborated Mother's testimony that she was in "negotiations with the Central Bucks School District related to" Child. *Id.*

*Father*

Father confirmed that he and Mother entered into a private agreement shortly after Child's birth, and that he paid child support from 2006 until 2024, shortly after Child turned 18. *Id.* at 40. Although Father lives in Connecticut, he testified to seeing Child regularly and having a good relationship with Child. *Id.* at 41. Father relayed his understanding that Child did not graduate from high school in 2024, when he was 18, because "he was having issues with getting to school on time." *Id.* at 42. He stated that Child "had a few classes to complete … that's the best of my knowledge." *Id.*

According to Father, Child is independent and "very able to function in adult society." *Id.* at 43. Father also testified to his belief that Child's anxiety

_____

[3] While not material, Attorney Batchis's testimony differs from Mother's testimony that she retained Attorney Batchis in October 2023. *See id.* at 14.

had no bearing on his ability to finish the two credits required for him to graduate from high school. *Id.* at 44-45.

*Closing Arguments*

Counsel presented arguments. Although Mother was the moving party, Father's counsel first argued:

> Your Honor, we're before the [c]ourt today to decide whether or not the [c]ourt should impose a child support obligation on my client for a 19-year-old adult.
>
> It would be the Plaintiff/Mother's burden to demonstrate to the [c]ourt the need for such a child support obligation under the statutes and the case law, and she's failed to carry that burden today.
>
> There is no guardianship order in place or any other court order that states [Mother] is allowed to make any types of decisions relating to this 19-year-old adult male.
>
> [Mother] failed to show that he suffers from any physical or mental condition preventing his own self-support. [She has] provided no experts as witnesses in this regard, and, furthermore, nothing within [Mother's] exhibits state that his alleged disabilities prevented him from graduating on time or stopped him from showing up to school on time and not being tardy.
>
> In fact, the exhibits will show that we have a very bright child who simply doesn't apply himself, Your Honor. And his biggest problem, according to the teachers and the interviews that you'll read in this evaluation, is that he couldn't bring himself to get to school on time.
>
> The testimony demonstrated that [Child] is independent. He has a car. He has a job. He goes where he wants, when he wants. He sees his friends. He takes no medication for his alleged disabilities.
>
> In fact, [Mother] has shown nothing to support her claim that [he] should receive child support from my client as an adult, other than the fact that he may still be technically enrolled in high school.

But, conversely, Your Honor, it's undisputed that he hasn't gone to school … for the entire fall 2024-2025. We're approaching the end of the school year; he hasn't been in school and he had two credits left to graduate.

You need to go to school in order to graduate, Your Honor, therefore [Mother's] reliance on this fact, given the totality of the circumstances present, Your Honor, is form over substance.

We don't know whether [Child] will ever go back to school. Given the current pattern of him not attending school at all, it's very likely that he won't go back to school.

[Mother] had her IEP attorney testify stating that she hopes that some kind of resolution will be occurring in the near future relating to this, but this is just pure speculation. We don't know what's going to happen in the future as we sit here today, and the [c]ourt cannot make a determination based upon what may happen in the future or what may not happen in the future.

And perhaps the most important fact here, Your Honor, as I alluded to earlier, is that [Child] is now a 19-year-old adult. He doesn't have to listen to his parents. He doesn't have to listen to hi[s] school, which is the high school. He doesn't have to listen to anybody, Your Honor, anymore. He can do whatever he wants.

And at this point in time he's not going to school; it's not likely that he will go to school in the future, Your Honor, and there's been no indication that any of these perceived disabilities are preventing him from supporting himself or preventing him from functioning as a well-adjusted adult in society, Your Honor.

So for these reasons the application must be denied.

*Id.* at 46-49.

Next, Mother's counsel argued:

You heard evidence today related to [Child] and [Mother's] actions in order to make sure he receives a fair, appropriate public education. You might realize that that term is called FAPE, and that the Central Bucks School District is required to provide that for [Child].

You have materials in front of you including his IEP, his evaluation – reevaluation report, all of which indicate his medical diagnoses

and those including generalized anxiety disorder, including a vomiting disorder when he has … the physical manifestations of his anxiety.

As such, the Central Bucks School District has acknowledged, and I provided you documentation of the same, that they are to provide transitional services to [Child]. Those services, as you're aware, can be provided until a child turns 22.

The Central Bucks School District is, in fact, doing that. You heard reliable testimony from his counsel -- from his special education counsel, Leah Batchis, as it relates to what steps have been taken.

You saw [Child's] application to the Chester County Technical High School, that he made application in September of 2024. My client did not make that application. [Child] made that application.

[Mother's] testimony was that that … he was initially accepted and then when there w[ere] issues about payment of Central Bucks that issue changed.

[Mother] is actively, as is [Child], pursuing the appropriate education.

[Rule] 1910.19(e) of the Pennsylvania Rules of Civil Procedure indicate that a child support obligation is payable until a child turns 18 or graduates from high school, whichever last occurs.

The IEP information that you have in front of you, as well as the evaluation reports, state clearly that this child is continuing to pursue an appropriate education, has not received a diploma, has not graduated from high school, and as such I would suggest we met our burden.

Our burden here is not necessarily that [Child] is disabled. Our burden here is that he hasn't graduated from high school yet and is actively pursuing that appropriate, fair … appropriate public education, FAPE.

To that end, Your Honor, it is clear that an obligation is still payable from [Father] to [Mother] and we ask once a determination of her entitlement is made that you refer us back to a conference so that an appropriate calculation can be made as to the amount of support payable to my client.

*Id.* at 49-52.

After hearing counsels' arguments, the trial court stated, "I find that [C]hild is still enrolled in high school and I therefore find a child support order is appropriate." *Id.* at 52. The court added that it would "refer the parties back to the conference for a calculation." *Id.* The court then issued a written order which stated, "the child subject to this Order has not yet graduated and a child support order is appropriate." Order, 4/30/25 (stating "parties were referred back to Domestic Relations this date for support conference").[4] The court entered a second order, which was also filed on April 30, 2025, directing Father to pay child support of $1,291 per month. Father filed a timely notice of appeal from the first order on May 22, 2025, as well as a court-ordered statement of errors pursuant to Pa.R.A.P. 1925.[5],[6]

Father presents the following questions for review:

1. Whether the trial court erred as a matter of law in continuing a child support obligation after [C]hild reached majority and was not attending school, contrary to Pa.R.Civ.P. 1910.19(e)[?]

2. Whether the trial court abused its discretion and violated due process by admitting over 100 pages of exhibits immediately

---

[4] The order was dated April 25, 2025, and filed on April 30, 2025, when notice was provided pursuant to Pa.R.Civ.P. 236. *See* Pa.R.A.P. 108(b) (stating the date of entry of a civil order is "the date on which the clerk makes the notation in the docket that written notice of entry of the order has been given as required by Pa.R.Civ.P. 236(b)").

[5] Although Father was represented by counsel before the trial court, he filed his notice of appeal *pro se* and continues to represent himself on appeal.

[6] On August 18, 2025, the Superior Court remanded the record and directed the trial court "to file a **compliant** Rule 1925(b) Order" and "file an opinion that addresses the issues raised by" Father. *See* Order, 8/18/25, at ¶¶ 3, 5 (emphasis added).

before the hearing and denying [Father] the opportunity to cross-examine regarding the evidence[?]

3. Whether the trial court abused its discretion by disregarding the [DRO]'s recommendation and failing to find constructive emancipation under *Maurer v. Maurer*, 555 A.2d 1294 (Pa. Super. 1989) and *Style v. Shaub*, [955 A.2d 403 (Pa. Super. 2008)?]

Father's Brief at 2-3.

In reviewing Father's questions, we begin with a discussion of applicable law, followed by our consideration of Father's evidentiary and substantive claims.

*Applicable Law*

We review a child support order for an abuse of discretion. *Blue v. Blue*, 616 A.2d 628, 630 (Pa. 1992). "An abuse of discretion is more than an error of judgment. It must be a misapplication of the law or an unreasonable exercise of judgement." *DeWalt v. DeWalt*, 529 A.2d 508, 510 (Pa. Super. 1987) (citation omitted). "The function of the appellate court is to determine whether there is sufficient evidence to sustain the order of the hearing judge." *Johnson v. Johnson*, 153 A.3d 318, 321 (Pa. Super. 2016) (citation omitted).

In this case, no child support order was in effect when Child turned 18. However, it is relevant that the Rules of Civil Procedure provide:

**(e) Emancipation Inquiry and Notice.** Within six months prior to the date a child who is the subject of a child support order reaches 18 years of age, the domestic relations section shall issue an emancipation inquiry and notice to the obligee, with a copy to the obligor, seeking the following information:

- 11 -

(1) confirmation of the child's date of birth, date of graduation or withdrawal from high school;

(2) whether the child has left the obligee's household and, if so, the date of departure;

(3) the existence of any agreement between the parties requiring payments for the benefit of the child after the child has reached age 18 or graduated from high school; and

(4) any special needs of the child which may be a basis for continuing support for that child beyond the child's 18th birthday or graduation from high school, whichever is last to occur.

The notice shall advise the obligee that if the inquiry is not returned within 30 days of mailing or if there is no agreement or the child does not have any special needs, the charging order may be modified or terminated by the court.

Pa.R.Civ.P. 1910.19(e). This Court has explained:

Emancipation of a child for purposes of the statute governing a parent's liability for support of a child is a question of fact to be determined by the totality of the circumstances presented in each case. [T]here are varying circumstances which we must consider in determining whether a child is emancipated. These include, but are not limited to, the child's age, marital status, ability to support himself or herself, and [the] desire to live independently of his or her parents.

*Castaldi v. Castaldi-Veloric*, 993 A.2d 903, 911 (Pa. Super. 2010) (citation omitted).

Like the Rules of Civil Procedure, the Domestic Relations Act provides that a court "shall not order either or both parents to pay for the support of a child if the child is emancipated." 23 Pa.C.S. § 4323(a). There are exceptions when a parent "may be liable for the support of their children who are 18 years of age or older." *Id.* at § 4321(3). We have stated,

- 12 -

as a general rule, the duty to support a child ends when the child turns eighteen or graduates from high school. However, pursuant to 23 Pa.C.S. § 4321(3), a parent may be required to support a child who, upon reaching the age of majority, has a mental or physical condition that prevents the child from being self-supporting. To determine if an order of support is appropriate, the test is whether the child is physically and mentally able to engage in profitable employment and whether employment is available to that child at a supporting wage.

*Kotzbauer v. Kotzbauer*, 937 A.2d 487, 489-90 (Pa. Super. 2007) (citations omitted).

This Court has "note[d] that a parent is only called upon to support an adult child to the extent the child cannot aid him or herself." *Crawford v. Crawford*, 553, 633 A.2d 155, 161 (Pa. Super. 1993). The moving party "bears the burden of proving the conditions that make it impossible for [an adult child] to be employed." *Heitzman-Nolte v. Nolte*, 837 A.2d 1182, 1184 (Pa. Super. 2003) (quoting *Verna v. Verna*, 432 A.2d 630, 632 (Pa. Super. 1981)). However, when a child "has attained majority, has no disabilities and neither desires nor has the capability of attending a course of advanced training to reasonably prepare him for self-sufficiency, continued support is not in order." *Maurer v. Maurer*, 555 A.2d 1294, 1298 (Pa. Super. 1989).

*Trial Court's Admission of Exhibits M-1, M-2 and M-3*

Father argues the trial court erred by admitting the IEP-related documents in Exhibits M-1, M-2 and M-3. Father states that he was unable "to challenge over 100 pages of exhibits introduced the day of the hearing." Father's Brief at 3. He also asserts that after the trial court admitted the

- 13 -

exhibits, it "deprived [Father] of a fair opportunity to contest the evidence." *Id.* at 4. Father cites the trial court's remarks to his counsel when counsel was questioning Mother about Exhibit M-1, the reevaluation report. *Id.* (citing N.T. at 23 (trial court stating to Father's counsel, "what's the point of going through this and having her tell me what it says when I can read it myself?").

In reviewing this claim, we recognize:

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Wilson v. Smyers*, 284 A.3d 509, 514 (Pa. Super. 2022) (citations omitted). To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. *Int. of S.A.S.*, 305 A.3d 1039, 1048 (2023) (citation omitted).

We are unpersuaded by Father's argument because even if the trial court erroneously admitted the evidence, Father was not harmed or prejudiced by the admission. As indicated above, Father's counsel referenced the exhibits in support of his closing argument. Counsel stated:

> [Mother] failed to show that [Child] suffers from any physical or mental condition preventing his own self-support. [Mother has] provided no experts as witnesses in this regard, and, furthermore, **nothing within [Mother's] exhibits state that his alleged disabilities prevented him from graduating on time or stopped him from showing up to school on time and not being tardy**.

- 14 -

**In fact, the exhibits will show that we have a very bright child who simply doesn't apply himself, Your Honor. And his biggest problem, according to the teachers and the interviews that you'll read in this evaluation, is that he couldn't bring himself to get to school on time.**

N.T. at 47 (emphasis added).

Upon review, we cannot conclude that Father was harmed or prejudiced by the admission of Mother's exhibits. Accordingly, Father's evidentiary claim does not merit relief.

### *Trial Court's Child Support Order*

Father claims the trial court erred in deciding that Father was obligated to pay child support because Child had not graduated from high school. Father asserts that Child's "enrollment without attendance does not satisfy" Child's entitlement to support, and contends that Child "demonstrated independence consistent with emancipation." Father's Brief at 3-4. Father states:

> Although the trial court found [Child] 'remains enrolled' at Central Bucks East High School, the evidence established that he has not attended any classes since Spring 2024. The record further shows [Child] is an adult over 19 years old[,] able to make his own decisions, drives, is able-bodied and capable of employment.

*Id.* at 3. In support, Father cites the DRO's recommendation and our decision in *Style v. Shaub*, 955 A.2d 403 (Pa. Super. 2008). *Id.* at 3-5.

In applying section 4321(3) pertaining to liability for support, this Court has recognized the presumption that a parent's child support obligation ends when the child reaches majority. We have explained:

Ordinarily a parent is not required to support his adult child but there is a well-recognized exception supported by abundant authority that where such child is too feeble physically or mentally to support itself the duty on the parent continues after the child has attained its majority.

*Style*, 955 A.2d at 408 (citations omitted).

In *Style*, the child's mother, Ms. Style, alleged that the parties' son, "now 19, had psychiatric and medical limitations that precluded him from maintaining gainful employment to support himself." *Id.* at 406.

At the hearing, testimony revealed [the child] had a long history of psychiatric and medical disabilities, including diagnoses for Attention Deficit Hyperactivity Disorder ("ADHD"), Oppositional Defiant Disorder ("ODD"), dysthymia (also referred to as chronic depression), and Atypical Autism. [The child] testified that he had been taking various medications for these conditions for most of his life.

*Id.* (citations omitted).

We found that because the child's "psychiatric and medical disabilities existed before he reached the age of majority, … th[e] presumption [that the child's father was not obligated to pay child support] was rebuttable upon proof … that [the child's] disabilities prevented him from being self-supporting." *Id.* at 409. Nonetheless, we agreed with the trial court's denial of Ms. Style's request for child support based on the record containing insufficient evidence to prove the child was not "physically and mentally able to engage in profitable employment[,] and whether employment [wa]s available to that child at a supporting wage." *Id.* We explained:

In addition to their own testimony, [Ms.] Style and [the child] offered the expert testimony of Mr. Hogarth, [the child's] vocational evaluator…. Mr. Hogarth testified that he had

- 16 -

evaluated [the child's] performance of a variety of work tasks over a three-week period and found that [he] demonstrated adequate oral communication skills, but lacked initiative, motivation and was easily distracted. Mr. Hogarth testified that distractions might be alleviated by medication for ADHD. Mr. Hogarth also noted that he observed improvement in [the child] by the third week of evaluation. [The child] was able to perform a variety of physical tasks, worked slowly but consistently, was punctual, performed a satisfactory amount and quality of work with some supervision, and was courteous and cooperative. In sum, although Mr. Hogarth described [child] "as a person in need of rehabilitative services," he opined that he "gave him a guarded diagnosis for successful entry in the workforce at the present time."

[Ms.] Style's testimony regarding [the child's] abilities was considerably more negative. She testified that [the child] had an unsuccessful work history, that he always "needs a structured environment," and that he requires constant supervision. She further testified that in her view[, child] is not capable of living on his own and that he is not employable.

*Id.* at 409-10 (citations and footnote omitted).

We observed that as to the first part of the test, *i.e.*, whether the child was physically and mentally able to engage in profitable employment, Ms. Style failed to prove that the child was "not able to engage in profitable employment." *Id.* at 410. "With regard to the second part of the test for rebutting the presumption, namely whether employment [wa]s available to the child at a supporting wage," we found "little or no evidence in this regard." *Id.* Thus, we affirmed the trial court's order denying child support. *Id.* at 411.

Here, the trial court concluded "Father is still liable for support because Child has not graduated high school" and "is currently enrolled at Central Bucks East High School." TCO at 9 (citations to notes of testimony omitted).

- 17 -

The court found "Child can engage in profitable employment, [but] not at a supporting wage"; rejected Father's claim of Child's "constructive emancipation" because "constructive emancipation is not a legally recognized principle"; and stated that even if "such a doctrine were acknowledged," the court would not conclude that Child was emancipated. *Id.* at 10-11. The trial court specifically rejected Father's reliance on *Style* because "Child has not yet graduated from high school" and "is unable to attend school regularly due to disabilities." *Id.* at 16. We disagree with the trial court, as the evidence is insufficient to sustain its findings.

The record does not support a finding that Child is unable to attend school because of disabilities. The trial court relies on Mother's testimony — as a layperson and interested party — that Child suffers from anxiety, ADHD, and depression. *See* TCO at 10. Mother did not present any medical or expert testimony regarding these conditions. In addition, she testified that Child has had the issues since grade school, yet the evidence showed that Child had progressed to his senior year of high school and was only two credits short of graduating. Mother further testified that Child does not take any medication, is highly intelligent, has friends, drives his car, and earns income delivering food.

Even if we were to assume that Child's disabilities precluded him from attending school, the evidence would be insufficient to rebut the presumption that Father's legal obligation to pay child support had ended. *See Style*, 955 A.2d at 409. To rebut the presumption that a parent has no obligation to

support an adult child, "the test is whether the child is physically and mentally able to engage in profitable employment and whether employment is available to that child at a supporting wage." *Id.* Without any substantive evidence, the trial court found that Child's disabilities "mak[e] it unreasonable to expect him to hold even a supervised job." TCO at 16. The court appears to rely on Mother's unsubstantiated opinion that Child is incapable of working full-time and supporting himself. While the trial court may credit Mother's testimony, that testimony is contrary to Father's testimony, and as Father's counsel observed, the testimony of both parents, "demonstrated that [Child] is independent. He has a car. He has a job. He goes where he wants, when he wants. He sees his friends. He takes no medication." N.T. at 47-48. The record contains insufficient evidence to support a finding that Child is unable to engage in profitable employment and no evidence regarding the availability of employment at a supporting wage. Accordingly, the trial court erred in determining that Father was obligated to pay child support.

Order vacated.[7] Jurisdiction relinquished.

_____

[7] As the order erroneously determined that Father was obligated to pay child support, we vacate the companion order, also entered on April 30, 2025, which directed Father to pay child support in the amount of $1,291 per month. *See Commonwealth v. Friend*, 896 A.2d 607, 615-16 (Pa. Super. 2006) (vacating two orders after finding the former "was issued in error," and "the effect of that error directly affected the validity of the subsequent order").

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 3/12/2026