Sarah E. HEITZMAN–NOLTE, Appellant,

v.

Carl R. NOLTE, Appellee.

Superior Court of Pennsylvania.

Argued Oct. 21, 2003.

Filed Nov. 17, 2003.

Reargument Denied Jan. 9, 2004.

Theresa B. Male, Harrisburg, for appellant.

Jacqueline M. Verney, Carlisle, for appellee.

BEFORE: JOHNSON, MONTEMURO * and TAMILIA, JJ.

OPINION BY MONTEMURO, J.:

¶ 1 This is an appeal from an order denying the petition of Appellant Mother for the continuation of child support for the parties' son A.J. who has been blind since birth.

¶ 2 The parties were married in 1980.[1] A.J. was born in August of 1984 suffering from a rare form of retinitis pigmentosa known as Leber's Congenital Amaurosis. Despite his blindness, A.J. distinguished himself academically, among other honors he was a National Merit Scholar, and as a result attends college on a combination of scholarships and grants, including a subsidy from the Commonwealth Bureau of Blindness and Visual Services (BVS), all of which, in combination, completely cover tuition, room and board. Neither parent pays any of A.J.'s college expenses. He is, however, dependent on others, including his mother, his college roommate and classmates, for assistance with certain basic quotidian activities.

¶ 3 Prior to A.J.'s 18th birthday and subsequent to his high school graduation, Appellant petitioned the court to extend

---

* Retired Justice assigned to Superior Court.

1. The parties were divorced during the pendency of the support proceedings.

child support payments on the basis of 23 Pa.C.S.A. § 4321(3), which provides that "[p]arents may be liable for the support of children who are 18 years of age or older." After a hearing the trial court denied Appellant's petition, terminating Appellee's support obligation, and this appeal followed.

¶ 4 In child support cases the appellate courts review the trial court's decision for an abuse of discretion. *Blue v. Blue,* 532 Pa. 521, 616 A.2d 628, 630 (1992). Generally, a child's legal eligibility for support ends on his/her 18th birthday or graduation from high school, whichever comes later. *Id.* at 633. However, when, at that point, the child suffers from some mental or physical condition which prevents self-support or emancipation, the parental obligation continues under Section 4321(3). *Geiger v. Rouse,* 715 A.2d 454, 458 (Pa.Super.1998), *appeal denied,* 1999 WL 112220, 1999 Pa. Lexis 554 (Pa.1999); *Crawford v. Crawford,* 429 Pa.Super. 540, 633 A.2d 155 (1993); *Hanson v. Hanson,* 425 Pa.Super. 508, 625 A.2d 1212 (1993). The test to determine whether an order of support is appropriate is "whether the child is physically and mentally able to engage in profitable employment and whether employment is available to that child at a supporting wage." *Hanson, supra* at 1214 (emphasis added). "The adult child ... bears the burden of proving the conditions that make it impossible for her or him to be employed." *Verna v. Verna,* 288 Pa.Super. 511, 432 A.2d 630, 632 (1981).

¶ 5 Here, the trial court declined to extend the order directing Appellee to pay support because it found that Appellant had failed to show that A.J.'s "physical condition renders him unable to obtain self-supporting employment." (Trial Ct. Op. at 8). The court found that A.J. had "developed skills, such as utilizing voice-recognition software and memorizing the layout of facilities, that allow him to handle his academic requirements and that may be transferred to a professional environment." (*Id.*).

¶ 6 However, uncontradicted hearing testimony revealed that A.J. still requires mobility training to navigate the route from his dormitory room to classes. He testified that even with such training as he has received, if for some reason he gets "turned off on a sidewalk," (N.T.,10/15/02, at 35), he is lost. Since there are constant changes on the campus, and presumably because he will attend different classes, he will require further mobility training to accommodate the changes. He testified that to develop the ability to walk the two blocks from his mother's house to the high school he attended took most of a year's worth of training. Further, he cannot yet use public transportation unaided.

¶ 7 A.J. also testified that the assistance of a sighted person is necessary for him to deal with activities as varied as several computer related operations and utilizing the school cafeteria, that he was unable yet to do his own laundry, or even, until recently, cut his own nails without some supervision. Acquiring the ability to perform these functions to the extent that he now does so has taken the guidance of two different trainers over a period of about 6 months.

¶ 8 Insofar as specific employment is concerned, A.J. himself noted that campus jobs are incompatible with his skill level, as he could not wash dishes, serve food or do the cleaning chores usually assigned to students. He also expressed doubt whether his computer skills were sufficiently sophisticated to allow him to compete for employment with sighted people. Moreover, as his mother, who is employed at an agency which places temporary workers pointed out, no employer is required to accommodate A.J.'s sightlessness for a part-time or temporary job.

¶ 9 A.J. is, in fact, still acquiring both the daily living and technical skills required even for the most minimally demanding of positions. The testimony clearly demonstrated that transfer of the skills he has to what the trial court terms a "professional environment" is at the very least problematic. Nor has Appellee, or indeed, anyone else, provided information concerning "employment at a supporting wage" available for one with A.J.'s difficulty at this stage of his development.

¶ 10 Despite A.J.'s unquestioned intelligence, the training required for the totally blind to acquire both life and work skills is a time consuming and labor intensive process which cannot successfully be abbreviated. The trial court relies on *Blue, supra,* for the proposition that an assessment of a child's ability to be self-supporting is an objective standard. There is no contention that A.J. is not physically disadvantaged; objectively his disability presents an obstacle to self support. Moreover, as this Court has held in *Crawford, supra,* "[*Blue* ] did not provide even the slenderest reed to support the inference that parents should not be required to support dependent adult children." *Id.* at 161, 616 A.2d 628. Nor does college attendance necessarily invalidate the finding of dependency requiring parental support. In *Geiger, supra,* this Court found that parents were responsible for the medical bills of a college student daughter suffering from cerebral palsy whose difficulties in coping with her condition caused her to seek psychiatric help. Although the issue concerned the parental obligation to third parties rather than support *per se,* the daughter's college attendance was never regarded as in any way definitive of her status as an adult dependent.

¶ 11 In an analogous dilatation, we have found support appropriate for an adult child participating in a residential program pursuant to an order of the Juvenile Court. *Erie Office of Juvenile Probation v. Schroeck,* 721 A.2d 799 (Pa.Super.1998). Again although the specific issue was different, the government's right to seek reimbursement for services provided, we held that the conditions of the residential program made the child virtually unemployable during his participation, and noted that "[t]he term 'unemployable' is intended to mean that the child is not capable of being self-supporting whether on a temporary or a permanent basis and whether or not such limitation is caused by mental or physical disabilities." *Id.* at 804. That statement defines A.J.'s condition at this point.

¶ 12 No subjectivity is involved in assessing the unrebutted evidence that A.J.'s blindness has caused him to reach adulthood without assimilating all of the essential skills necessary for independence and which sighted persons, even those with minimal education and no more than average intelligence, absorb automatically. While he will, undoubtedly, with the necessary assistance acquire such skills, their absence at this point compels the conclusion that A.J. is as yet unemancipated, unemployable and remains in need of parental support. It is only A.J.'s manifest capacity eventually to overcome his disability which distinguishes him from the dependant children whose support is upheld in the case authorities; his current condition is incompatible with self-support. The trial court, given the evidence before it, abused its discretion in finding otherwise. Accordingly, we reverse and remand to the trial court for entry of an order extending Appellee's previous support obligation.

¶ 13 Order reversed. Case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.