J-S67004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| C.L.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| R.A.D. | : | |
| | : | |
| Appellant | : | No. 1332 MDA 2019 |

Appeal from the Order Entered July 12, 2019
In the Court of Common Pleas of Union County Domestic Relations at
No(s): 18-90126

BEFORE: OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.: **FILED JANUARY 31, 2020**

Appellant, R.A.D., appeals from the trial court's July 12, 2019 child support order. We affirm.

The facts and procedural history of this case are as follows. The parties, Appellant and C.L.D. ("Mother"), married in 1994 and later divorced in 2004. Their child, E.D., was born in September 1999. In August 2016, E.D. was diagnosed with epilepsy. On August 1, 2018, more than a month before E.D.'s 18th birthday, Mother filed a support complaint. Subsequently, on October 10, 2019, the court entered an interim order directing Appellant to pay $960.88 per month in support of E.D.

Appellant timely requested a *de novo* hearing, which took place on March 22, 2019. During the hearing, Dr. Ashutosh Kumar, E.D.'s pediatric

_____

[*] Former Justice specially assigned to the Superior Court.

neurologist, testified and provided a comprehensive view of E.D.'s condition. N.T. *De Novo* Hearing, 3/22/19, at 13-47. Specifically, Dr. Kumar confirmed E.D.'s epilepsy diagnosis, explained that E.D. previously experienced seizures, and noted that his last seizure occurred in August 2018. **Id.** Dr. Kumar did not, however, express an opinion as to E.D's capacity to work or support himself. **Id.** at 21-22. John Dieckman, a disability specialist, also testified and opined that E.D.'s condition did not prevent him from finding employment. **Id.** at 9-11 and 47-67. After the hearing concluded, the trial court dismissed Appellant's *de novo* appeal. Trial Court Order, 3/22/19, at 1.

On April 8, 2019, Appellant filed a motion for reconsideration. Appellant's Motion for Reconsideration, 4/8/19, at 1-8. The trial court granted Appellant's motion on April 18, 2019. Trial Court Order, 4/18/19, at 1. After conducting a further review, on July 12, 2019, the trial court reaffirmed its March 22, 2019 order. Trial Court Order, 7/12/19, at 1. This timely appeal followed.[1]

Appellant raises the following issues on appeal:

I.   Whether the [trial court] erred by admittedly applying the wrong legal standard in [its March 22, 2019 order]?

---

[1] Appellant filed a notice of appeal on August 8, 2019. On August 13, 2019, the trial court filed an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b)(1). Appellant timely complied. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on September 5, 2019, expressly noting that it relied on its July 12, 2019 order for this appeal.

II.   Whether the [trial court] erred when, contrary to the presented evidence, it found that E.D. was "mentally and physically unable to engage in profitable employment?"

III.  Whether the [trial court's March 22, 2019 order] and [its July 12, 2019 order] constitute an abuse of discretion as [they] ignore[] the law that E.D. has the burden of proof?

Appellant's Brief at 4.

We review child support orders for an abuse of discretion. ***Blue v. Blue***, 616 A.2d 628, 630 (Pa. 1992).  "An abuse of discretion is more than an error of judgment.  It must be a misapplication of the law or an unreasonable exercise of judgement." ***DeWalt v. DeWalt***, 529 A.2d 508, 510 (Pa. Super. 1987), *citing* ***Kopp v. Turley***, 518 A.2d 588, 590 (Pa. Super. 1986).

In Pennsylvania, "the duty to support a child generally ceases when [he] reaches the age of majority, which is defined as either [18-years-old] or when [he] graduates high school, whichever comes later." ***Style v. Shaub***, 955 A.2d 403, 408 (Pa. Super. 2008).

> However, when, at that point, the child suffers from some mental or physical condition which prevents self-support or emancipation, the parental obligation continues under [23 Pa.C.S.A. § 4321(3)]. ***Geiger v. Rouse***, 715 A.2d 454, 458 (Pa. Super. 1998), *appeal denied*, 1999 WL 112220 (Pa. 1999); ***Crawford v. Crawford***, 633 A.2d 155 (Pa. Super. 1993); ***Hanson v. Hanson***, 625 A.2d 1212 (Pa. Super. 1993).  The test to determine whether an order of support is appropriate is "whether the child is physically and mentally able to engage in profitable employment and whether employment is available to that child at a supporting wage." ***Hanson***, ***supra*** at 1214[.] "The adult child . . . bears the burden of proving the conditions that make it impossible for [] him to be employed." ***Verna v. Verna***, 432 A.2d 630, 632 (Pa. Super. 1981).

- 3 -

*Heitzman-Nolte v. Nolte*, 837 A.2d 1182, 1184 (Pa. Super. 2003).

Each of Appellant's claims, in essence, challenge the trial court's order awarding child support for E.D. Appellant's Brief at 4. As such, we will address these related claims together.

To be eligible for support, E.D., as a 19-year-old high school graduate, must rebut the presumption that Appellant's legal obligation to pay child support ended. To do so, E.D. relied upon the testimony of Dr. Kumar, his treating physician.[2] The trial court summarized Dr. Kumar's testimony as follows:

_____

[2] At the outset of the March 22, 2019 *de novo* hearing, Appellant's counsel made the following statement:

> **[Appellant's Counsel]**: Your honor, if it helps, Attorney Brian Kerstetter and I kind of talked about this just to see if we could streamline it. So[,] as I read the case law, the burden [of proof] is on the person that is over [18-years-old] to prove that the disabilities continues [*sic*] or there's – the case – the presumption is [that] when a child reaches the age of majority, the duty of the parent to support the child ends. And then once that presumption arises, it [is] incumbent upon the child to rebut that presumption.
>
> **The [c]ourt**: To rebut that.
>
> **[Appellant's Counsel]**: The duty to support would continue if the child is physically or mentally feeble is what the case law says. But we thought instead of – instead of going through that order, we have Dr. Kumar ready to testify, and we have a vocational expert, and Attorney Kerstetter and I agreed that we would have the doctor go first, and then the vocational [expert]. And if that does [not] resolve the matter, then it would go back to [Attorney Kerstetter for] his client [to testify] and then perhaps my folks.

Dr. Kumar [is] a board-certified pediatric neurologist, board certified in epilepsy, a Professor in Pediatric Neurology, an Assistant Professor at the Hershey Medical Center in Hershey, Pennsylvania, and [E.D.'s] treating physician since 2016. [At the March 22, 2019 hearing, Dr. Kumar testified that, following E.D.'s initial referral for an evaluation of epilepsy and his subsequent diagnosis in 2016, he sees Dr. Kumar for treatment every six months]. He stated that E.D. is on anti[-]seizure medication, which controls his seizures fairly well, but [E.D. still has] recurring seizures from time to time, the last [of which occurred] in August 2018. [Dr. Kumar explained that E.D.,] in the past, [has had] both grand mal[3] and petit mal seizures.[4] [Per Dr. Kumar,] [t]he seizure in August 2018 was what is called a complex partial or focal seizure, during which [E.D.] became confused, vomited[,] and was in an out of consciousness. [Dr. Kumar explained that, due to E.D.'s epilepsy, he] restricted [him] from driving until he [was] seizure free for at least [six] months. Although[, at the time of the hearing, six] months [] passed since [E.D.'s] last

_____

N.T. *De Novo* Hearing, 3/22/19, at 3-4. Appellant now contends that E.D. and Mother did not meet their burden of proof because Appellant subpoenaed Dr. Kumar to testify and presented the testimony of the vocational expert, John Dieckman. Appellant's Brief at 13-14. In addressing this issue, the trial court acknowledged that, "if [Appellant] had never called any witnesses" E.D. would not have presented any evidence and "he would not have met his burden[.]" Trial Court Order, 7/12/19, at 2. Nonetheless, because of the aforementioned exchange, the trial court interpreted "the attorney's approach as a cooperative one," and considered "Dr. Kumar's testimony as an evidentiary package, without regard to who called him as a witness." *Id.* Thus, we conclude that Mother and E.D. utilized Dr. Kumar's testimony to meet their "burden of proving the conditions that make it impossible for [E.D.] to be employed." *Verna*, 432 A.2d at 632.

[3] Dr. Kumar explained that a "grand mal seizure [occurs] when [an individual has] convulsive episodes." N.T. *De Novo* Hearing, 3/22/19, at 30. Thus, an individual experiencing a grand mal seizure will either "stiffen up" or have "arrhythmic jerking." *Id.* According to Dr. Kumar, a grand mal seizure is "the most serious type of seizure that a person [can] experience." *Id.* at 31.

[4] Per Dr. Kumar, a petit mal seizure occurs when an individual becomes "confused," "star[es]" and is "not being himself." N.T. *De Novo* Hearing, 3/22/19, at 31. Unlike a grand mal seizure, the individual does "not have any jerking or twitching or any tonic activity." *Id.*

seizure and Dr. Kumar [stated that he] would sign off on [E.D.'s] driving restriction, [E.D.] has not yet obtained [a] driver's license. And[,] although Dr. Kumar [stated that he] did not impose any restrictions on [E.D.] that would prevent him from working[,] he has been prescribed "[d]iastat," a rescue medication, which must be administered to [E.D.] when he has a lengthy seizure. If [E.D.] has a seizure, it is important that there be someone in [E.D.'s] immediate vicinity[] who knows what to do in order to properly treat him, according to Dr. Kumar. Seizures can be a cause of death. Dr. Kumar described in detail the steps required by third parties to deal with someone having a seizure, including specialized protocols, and administration of the rescue medication if the seizure [does] not cease. Dr. Kumar clearly stated that children can grow out of their seizures, but that he would not pronounce [E.D.] seizure free until at least [two] years [] passed without another seizure episode. [Dr. Kumar further explained that the] underlying epilepsy is never actually cured, so the term used medically is "seizure freedom." [Thus,] [e]ven after [two] years of seizure freedom, a seizure is still possible. Dr. Kumar also noted that the medication that [E.D.] is taking to control his seizure[s] can have serious side effects. [Lastly], [Dr. Kumar stated that] seizures can be triggered by failure to take the prescribed medication as required and by life stressors, and lack of sleep.

Trial Court Order, 7/12/19, at 2-3 (footnotes added).

In this case, Dr. Kumar's testimony established that E.D. is "far from seizure free" and suffers from a "potentially fatal" condition. Trial Court Order, 7/12/19, at 2. The reality of E.D.'s condition is not negated by the fact that he graduated high school, completed his first semester of college, and "go[es] out with friends."[5] Appellant's Brief at 17; **see also Kotzbauer v.**

---

[5] Appellant omits the fact that E.D. completed high school through the use of "what they call hybrid education" which "involve[s] some education at home and some schoolwork." N.T. *De Novo* Hearing, 3/22/19, at 49. Thus, E.D. only attended school "part[-]time, perhaps 11[:00] [a.m.] to 2[:00] [p.m.]." **Id.** In addition, when E.D. attended high school, he "had some

***Kotzbauer***, 937 A.2d 487, 493 (Pa. Super. 2007) (holding that the trial court did not abuse its discretion by directing appellant to make monthly support payments for his 19-year old epileptic daughter despite her engagement in certain activities – working 16 to 20 hours per week, deer hunting, dancing in a theater production, attending a pool party and driving - because none of the aforementioned activities proved "that she [was] emancipated."). We therefore agree with the trial court's conclusion that E.D. demonstrated that he was "physically and mentally [incapable of] engag[ing] in profitable employment." ***Heitzman-Nolte***, 837 A.2d at 1184.[6] Thus, in light of the record, we conclude that there is sufficient evidence to sustain the trial court's order and that the court did not abuse its discretion in continuing Appellant's support obligation.

_____

accommodations" because of his epileptic condition. ***Id.*** The accommodations included, "the ability to . . . go to an alternate environment, such as a hybrid classroom, the ability to work with a student nurse, [and] to use the bathroom with the student nurse." ***Id.*** Personnel were also "alerted" so that, if E.D. had a seizure, "they would be able to respond and respond according to the program." ***Id.*** Lastly, we note that, while E.D. is in college, he takes online classes. ***Id.*** at 49-50.

[6] Appellant emphasizes the fact that there was "[n]o medical or other testimony that E.D. was unemployable." Appellant's Brief at 14. We note that our prior case law has clarified that the mere fact that an adult child is "employable" does not absolve a parent's support obligation. Indeed, in ***Com. ex. rel. Cann v. Cann***, 418 A.2d 403, 405 (Pa. Super. 1980) this Court stated that "the appellant must demonstrate not just that the [adult] child is capable of earning some income, but that the [adult] child is able to earn a sufficient living to be entirely self-supporting [] to justify vacating a support order." ***Id.***; ***see also Kotzbauer***, *937 A.2d at 490-494;* ***Com. ex. rel. Cann***, 418 A.2d 404-406; ***Hanson***, 625 A.2d 1212 (Pa. Super. 1993). Accordingly, Appellant's contention is meritless.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/31/2020